396 P.2d 828

The STATE of Arizona, Appellee,

v.

Tommy Albert SHEFFIELD, Appellant.

No. 1383.

Supreme Court of Arizona.

En Banc.

Nov. 13, 1964.

Robert Pickrell, Atty. Gen., and Norman E. Green, County Atty., Pima County, by Carl Waag, Deputy County Atty., for appellee.

Mario Cota Robles, Tucson, for appellant.

UDALL, Chief Justice.

The appellant, Tommy Albert Sheffield, hereinafter referred to as the defendant was convicted of the crime of "possession of a pistol by a criminal", a felony, in a trial by jury in the Superior Court of Pima County. From that conviction he brings this appeal.

On January 28, 1963, the defendant, along with Curtis McDoneal, James Bond, Mildred Griffin, and Freddie Mitchell went to Phoenix, Arizona from Tucson, Arizona in Mitchell's car. After their arrival, the defendant, McDoneal, Mitchell and Bond went to a store, the Stop and Swap Shop on Washington Street. McDoneal purchased a gun and another member of the group purchased a second gun. There is a conflict in the testimony as to who purchased the second one. Mr. Moody, the owner of the store was not able to testify as to who actually purchased it although the defendant's name was signed on the receipts. Mr. Joe Nemechek, a questioned documents examiner, testified that, in his expert opinion, the signatures on the receipts which Mr. Moody made out, upon comparison with admitted signatures of the defendant, were in fact defendant's signatures.

Later that day, January 28, 1963, defendant and the rest of his companions returned to Tucson, Arizona. Passenger McDoneal got out of the car near a food market after the group's arrival in Tucson. McDoneal was later that same day apprehended by the South Tucson Police Chief Cecil Cavender in connection with another criminal matter. During the interrogation, McDoneal told Chief Cavender there was a gun in Freddie Mitchell's automobile in which the defendant was riding. Later that evening Chief Cavender spotted the Mitchell car and stopped it. Mitchell was driving; defendant was in the front seat and Mildren Griffin was also in the car, although the record does not show where in the car she was riding. Chief Cavender inquired about the gun. The defendant said there was a gun in the glove compartment which belonged to his uncle, James Bond. Chief Cavender then placed the defendant under arrest without a warrant. Chief Cavender ordered another officer, Clarence Johnson, to get in the Mitchell car. He then followed the Mitchell car to the South Tucson Police Department. Upon his arrival and subsequent to the arrest, Officer Johnson produced a gun that he had found in the glove compartment of Mitchell's car while en route to the police station. City of Tucson police officers were called into the case and they undertook the inter-

rogation of the defendant. He was not advised of his rights and was not represented by counsel at this time. In the early part of the morning of January 29, 1963, the defendant was taken to the police station of the city of Tucson where he was fingerprinted and booked. On January 31, 1963 a complaint was filed against defendant and he appeared before a magistrate for the first time after his arrest three days earlier.

Before the trial, defendant's court-appointed counsel filed a motion to suppress certain evidence on the grounds that it was procured pursuant to an illegal search. He alleged the search was illegal because it was incident to an arrest which was illegal because it was without probable cause. Immediately preceding the trial, a hearing was had on this matter and the arresting officer Cavender and another officer testified. The court then denied defendant's motion to suppress.

In addition the defendant made a motion to dismiss the information on the grounds that he had been denied due process of law by keeping him incarcerated and failing to bring him before a magistrate for a period of three days after his arrest. During the period after his arrest and before he was brought before a magistrate he made several inculpatory statements to the interrogating officers which statements were admitted at the trial. This motion was also denied.

It should be noted here that the defendant was represented by court-appointed counsel in the trial and on this appeal. However, he has had three different counsel appointed, representing him at various stages of the appeal process.

The defendant first assigns as error the lower court's denial of defendant's motion to suppress certain evidence allegedly obtained pursuant to an unlawful search and seizure. The defendant points out that the record shows the arresting officer was acting on the information that defendant had a gun. He states that nowhere in the record does it appear the arresting officer knew at the time of the arrest that the defendant had been convicted of a crime of violence and that he had not been pardoned for such crime or regained his status as a citizen. See A.R.S. § 13–919 (1956). Nor does there appear in the record any other reason why the arresting officer may have sought out the defendant. Defendant argues that since the arresting officer did not know he, the defendant, had been convicted of a crime of violence and had not regained his status as a citizen, the officer would have no reasonable grounds or probable cause to arrest him. Therefore he claims the arrest was illegal making the incidental search illegal and the evidence seized pursuant thereto illegally admitted in derogation of his constitutional rights under the 4th and 14th amendments to the U.S. Constitution.

We concede that the transcript of the trial testimony does not contain sufficient evidence upon which to base the finding that the arresting officer had probable cause to arrest the defendant for the crime of which he was convicted. However, the record does show probable cause for arresting the defendant for the crime of carrying a concealed weapon. A.R.S. § 13–911 (1956). The gun was in the unlocked glove compartment of Mitchell's car and the defendant was riding in the front seat where the gun would be most accessible to him. We therefore believe the arrest could be justified upon this alone. Further, the minute entries in the record show that the defendant prior to the trial made a motion to suppress the evidence obtained as a result of the search incident to his arrest. Immediately preceding the trial, the trial judge held a hearing on this matter at which time the arresting officer and another officer testified. At the conclusion of this hearing the trial judge denied defendant's motion to suppress. The transcript of the testimony elicited during this pre-trial hearing is not before this Court. We cannot consider this alleged error where the transcript of such matter is not before us. State v. De Marinis, 92 Ariz. 225, 375 P.2d 574 (1962). In such absence, we will presume the trial court acted on sufficient grounds and did not commit error in denying defendant's motion to suppress the evidence. See People v. Chessman, 35 Cal.2d 455, 218 P.2d 769, 19 A.L.R.2d 1084 (1950), cert. denied 340 U.S. 840, 71 S.Ct. 29, 95 L.Ed. 616. Also, see Ackerman v. Southern Arizona Bank & Trust Co., 46 Ariz. 343, 50 P.2d 949 (1935).

The defendant next assigns as error the lower court's refusal to dismiss the information on the grounds that there had been a denial of due process of law in that the defendant was arrested and incarcerated without a criminal action having been filed against him. The defendant was arrested in the evening of January 28, 1963. In the early morning of January 29, 1963 he was transferred to the Pima County jail. On the 31st of January he first appeared before a magistrate.

The defendant points out that the arresting officer violated his duty in failing to bring the defendant before the nearest or most accessible magistrate without unnecessary delay as required by A.R.S. § 13–1418 (1956). Defendant argues that the three day incarceration after arrest and before bringing him before a magistrate and charging him with a crime is a denial of due process. The defendant, however, does not show or indicate why he was denied due process of law other than the three day delay. We have held that unless the preliminary delay in some way deprives an accused of a fair trial there is no denial of due process of law. State v. Maldonado, 92 Ariz. 70, 373 P.2d 583 (1962).

The usual argument advanced in this type of situation is to seek the exclusion of any admissions or confession made during the illegal delay. However, we have previously held that unnecessary delay does not ipso facto make such statements inadmissible solely by reason of the violation of the rule requiring prompt appearance before a magistrate after arrest. State v. Jordan, 83 Ariz. 248, 320 P.2d 446 (1958). That case held that the exclusionary rule advanced by the U. S. Supreme Court in McNabb v. United States, 318 U.S. 332, 63 S.Ct. 608, 87 L.Ed. 819, (1943) and Mallory v. United States, 354 U.S. 449, 77 S.Ct. 1356, 1 L.Ed.2d 1479 (1957) was not a constitutional restraint upon the state courts and that the proper test to be applied in these type of cases is the voluntariness test. See Annot., 19 A.L.R.2d 1331 (1951). Here, there is no allegation or evidence in this case to indicate that such statements were involuntary. In addition the statements were made shortly after the arrest and the several days delay occurred after the inculpatory statements were made. We therefore find no merit in defendant's argument on this matter. However, we again strongly emphasize that we in no way approve or condone the unnecessary delay that occurred in this case.

Judgment affirmed.

LOCKWOOD, V. C. J., and STRUCKMEYER, BERNSTEIN and SCRUGGS, JJ., concur.