407 P.2d 95

**The STATE of Arizona, Appellee,**

v.

**Wiley Edward KELLY, Appellant.**

**No. 1442.**

Supreme Court of Arizona.

En Banc.

Nov. 3, 1965.

Darrell F. Smith, Atty. Gen., Robert W. Pickrell, former Atty. Gen., Stirley Newell, former Asst. Atty. Gen., for appellee, Allen L. Feinstein, Phoenix, of counsel.

Joe R. Glenn, Mesa, for appellant.

McFARLAND, Justice.

This is an appeal from a judgment and conviction for the crime of the illegal possession of narcotics, in violation of A.R.S. § 36–1002, as amended in 1961. Appellant, hereinafter referred to as defendant, was tried before a jury, adjudged guilty and received a sentence of not less than six nor more than eight years in the Arizona state prison. From this conviction and sentence defendant appeals.

The facts of the case are as follows: On July 26, 1963, at approximately 9:30 p. m., three Phoenix city detectives, accompanied by three narcotics agents from the Department of Liquor Licenses and Control, searched the premises at 3439 East Sheridan in Phoenix. The search was made under authority of a search warrant, issued earlier that day by Justice of the Peace Ida Ann Westfall, which authorized a search of the premises in question and a certain Fiat automobile located on those premises. Upon arriving at the East Sheridan address, the officers were admitted to the premises by the 16-year-old brother of defendant, and proceeded to conduct a search of the home. Defendant and one Marlene Walsh remained in the home while the search was being conducted. During the course of the search a satchel, containing vials of drugs and various narcotics, was discovered behind a washing machine in a storage room at the rear of the house. Defendant and Marlene Walsh were tried in October 1963, during which a mistrial was granted because of certain prejudicial statements made before the jury by the deputy county attorney. Defendant and Mrs. Walsh were later tried in November 1963. A pre-trial motion to suppress the evidence obtained during the search was denied. The satchel and its contents were admitted into evidence over the objections of defendants. Defendant was found guilty while the jury became deadlocked regarding the charges against Mrs. Walsh.

Defendant asserts that it was error for the lower court to deny the motion to suppress admission of the narcotics that were found during the course of the search of the East Sheridan residence, and in admitting the same over his objection. Defendant in this contention stated that the affidavit "supporting the search warrant was insufficient and invalid, because it

lacked the following allegations necessary for a nighttime search:

"A. A positive allegation that the Affiant knew that the property was at the place to be searched, or facts sufficient to show that Affiant positively knew this.

"B. An allegation by the Affiant as to the date or time he received the information from the informer.

"C. An allegation by the Affiant as to the date or time the informer obtained his information.

"D. An allegation by the Affiant as to either the name of the informer, or an allegation that the informer is reliable and the facts that the Affiant bases this conclusion on."

The answer to defendant's assignments of error requires an examination of what constitutes probable cause for issuing a search warrant. Our statutes set forth the conditions under which a search warrant may be issued, as follows:

"§ 13–1443. Conditions precedent to issuance

No search warrant shall be issued except on probable cause, supported by affidavit, naming or describing the person, and particularly describing the property and place to be searched.

"§ 13–1444. Examination on oath; depositions

A. The magistrate shall, before issuing the warrant, examine on oath the complainant and witnesses the complainant produces, take their depositions in writing, and cause them to be subscribed by the parties making them.

B. The depositions shall set forth the facts tending to establish the grounds of the application or probable cause for believing they exist.

\*      \*      \*      \*      \*      \*

"§ 13–1447. Time of service; exception

The magistrate shall insert a direction in the warrant that it be served in the day time, unless the affidavits are positive that the property is on the person of the party, or in the place to be searched, in which case he may insert a direction that the warrant be served at any time of the day or night."

It will be noted that it is the duty of the court to examine complainant under oath; also that his testimony must be supported by affidavit "naming or describing the person, and particularly describing the property and place to be searched." The reason for requiring the examination of the magistrate is that the magistrate makes the determination of probable cause rather than the officer or officers applying for the search warrant. Aguilar v. State of Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723.

**140**

" 'that the inferences from the facts which lead to the complaint "[must] be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime." Johnson v. United States, 333 U.S. 10, 14, 68 S.Ct. 367, 369, 92 L.Ed. 436. * * * ' " 378 U.S. at 112, 84 S.Ct. at 1513.

▮ When a question is raised in regard to a search warrant the court must determine whether the procedure has been substantially followed, and whether the court issuing the warrant had sufficient grounds upon which to base its decision. The courts have held that there is a presumption in favor of the validity of a search warrant. State v. Sheffield, 97 Ariz. 61, 396 P.2d 828; Booze v. State, 390 P.2d 261 (Okl.); People v. Lombardi, 18 A.D.2d ·177, 239 N.Y.S.2d 161; Addison v. United States, 5 Cir., 317 F.2d 808; Wilson v. United States, 10 Cir., 218 F.2d 754; United States v. Thomas, D.C., 216 F.Supp. 942; Commonwealth v. Fancy, 207 N.E.2d 276 (Mass.); Nardone v. United States, 308 U.S. 338, 60 S.Ct. 266, 84 L.Ed. 307.

▮ In the instant case defendant moved to suppress the evidence obtained by the search warrant. The testimony elicited during this pre-trial hearing is not before this court. In State v. Sheffield, supra, on a motion to suppress evidence obtained as a result of the search where the transcript of the hearing was not before the court, we held:

" * * * Immediately preceding the trial, the trial judge held a hearing on this matter at which time the arresting officer and another officer testified. At the conclusion of this hearing the trial judge denied defendant's motion to suppress. The transcript of the testimony elicited during this pre-trial hearing is not before this Court. We cannot consider this alleged error where the transcript of such matter is not before us. State v. De Marinis, 92 Ariz. 225, 375 P.2d 574 (1962). In such absence, we will presume the trial court acted on sufficient grounds and did not commit error in denying defendant's motion to suppress the evidence. See People v. Chessman, 35 Cal.2d 455, 218 P.2d 769, 19 A.L.R.2d 1084 (1950), cert. denied 340 U.S. 840, 71 S.Ct. 29, 95 L.Ed. 616. Also see Ackerman v. Southern Arizona Bank & Trust Co., 46 Ariz. 343, 50 P.2d 949 (1935)." 97 Ariz. at 64, 396 P.2d at 830.

We must presume in the instant case that the court, in passing upon the motion to suppress the evidence, went into the matter carefully, and found that there was sufficient grounds for the issuing of the warrant by the magistrate.

In the case of United States v. Ventresca, 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684, the United States Supreme Court said:

" * * * In our view the officers in this case did what the Constitution requires. They obtained a warrant from a judicial officer 'upon probable cause, supported by Oath or Affirmation and particularly describing the place to be searched and the * * * things to be seized.' It is vital that having done so their actions should be sustained under a system of justice responsive both to the needs of individual liberty and the rights of the community." 380 U.S. at 112, 85 S.Ct. at 747.

Having found these procedures were followed in the instant case, the actions of the officers should be sustained.

██ The contention that the affidavit is insufficient in regard to the date the information was received from the informant, and in regard to the date the informer obtained his information, is not well founded. The affidavit is positive and definite in that it states the informant had "recently" seen defendant in possession of narcotics at both the East Sheridan address and in the Fiat automobile. Any more definite time might reveal the identity of the informant. In the case of Waggener v. McCanless, 183 Tenn. 258, 191 S.W.2d 551, 162 A.L.R. 1402, where it was the contention of defendant that the word "recently" was not sufficiently definite as to time, the court stated:

"It remains to consider whether a statement that the officer's informant had observed an offense 'just recently' and 'within the last few days,' was a statement of the time element of sufficient definiteness and certainty to supply the time element in a reasonable conclusion of probable cause. We have no hesitation in deciding that to a reasonable mind, a statement by an observer at the time he made application for a warrant, that he had just recently seen a quantity of liquor stored on certain premises and had within the last few days, bought drinks of intoxicating liquor on those premises, would lead to the conclusion that the unlawful condition continued to exist on those premises at the time of the application for the warrant." 191 S.W. 2d at 554, 162 A.L.R. at 1405.

Other courts have held the word "recently" is sufficiently definite as to the time the informant received his information. Ellison v. State, 186 Tenn. 581, 212 S.W.2d 387; Douglas v. State, 144 Tex.Cr.R. 29, 161 S.W.2d 92; Bickerstaff v. State, 139 Tex. Cr.R. 69, 139 S.W.2d 110; Hartless v. State, 121 Tex.Cr.R. 181, 50 S.W.2d 1097.

In regard to the contention set forth under "C," as to the date or time the informer received his information, it is answered by the same principles of law appli-

cable to "B." Certainly if the informant "recently" received or observed the facts sworn to by the affiant, then the requirement that the affiant state the date as to when he received his information is also met.

We conclude, therefore, from the record before us that the evidence before the trial court at the time it denied the motion to suppress the evidence was sufficient to justify its finding that the search warrant was valid—that the magistrate had examined the applicant, and had before her sufficient evidence to justify its issuance. We hold the court did not err in denying the motion to suppress the evidence.

Defendant contends the state should have been ordered to reveal the identity of the informant. During the course of the trial, defense counsel stated:

"MR. GLENN: Then at this time I will make an offer of—somewhat of a limited offer of proof as to the reason for the setting forth of the defense, what the defendant would testify to and what another witness will testify to. Without myself knowing the truth of this, it is for me to determine the truth.

"It would be this: shortly before the search or before the informant told Mr. Gardiner of these facts, that there was a jail break planned in the County Jail, and the jail break included, among other people, Mr. Kelly and a Mr. Charlie Monks; that the defense would prove that on the day before the jail break was to take place at night, Mr. Kelly, the defendant Kelly, was released from the County Jail on bond; that after his release somebody informed the Sheriff's Department about the intended break, and as a result of this information being given to the Sheriff's Department, the officers broke up the break before it actually happened. Mr. Monks will testify to the fact he was of the opinion Mr. Kelly was the one that squealed on them, or informed on them as to the break. He will testify to the fact that he told another person in the jail that was getting released and also used in the past as an informant to plant certain narcotics at Mr. Kelly's house.

"We will attempt to prove this informant was one of the few people that knew the fact that both Mr. Kelly and Mrs. Walsh was living at the same house. We would, if possible, present evidence that this informant was in the drug store that these materials were taken from, and based all this—based upon the reasonable inference that this informant was the one that put them there in the store room. As I said, the question of whether or not this is the truth is a question for the jury. I am not going into that. I am saying this is information that has been given to me. Whether or not it would even be per-

missible to give it to the jury would depend on who the informant was.

"I would request at this time the Court to compel the witness to answer the question as to who the informant was * * *.

\* \* \* \* \* \*

"MR. GLENN: No, Mr. Monks supposedly told a person to plant these narcotics there to get even with Mr. Kelly, and the information we have is that the person he told to plant the narcotics there is the same person as the informant."

Defendant contends that the failure of the state to furnish the defendant with the name of the informant deprived the defendant of his only defense—viz., that this informer, or some one this informer knew, had planted the narcotics in defendant's home. Therefore, defendant claims that there was prejudicial error committed when the trial court denied the defendant's motion to have the identity of the informer revealed. The appellee claims that the facts of this case are such as not to necessitate an exception to the "informer's privilege."

The leading case in this area of the "informer's privilege" is Roviaro v. United States, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639, wherein the failure of the government to disclose the identity of its undercover employee was held to be prejudicial as to defendant's case, as the undercover informant was the sole participant, along with the accused, in the crime charged. The United States Supreme Court held that the identity of the informant should have been revealed as he was "the only witness in a position to amplify or contradict the testimony of government witnesses." 353 U.S. at 64, 77 S.Ct. at 630.

In discussing the "informer's privilege," in Roviaro, supra, the court stated:

"What is usually referred to as the informer's privilege is in reality the Government's privilege to withhold from disclosure the identity of persons who furnish information of violations of law to officers charged with enforcement of that law. Scher v. United States, 305 U.S. 251, 254, 59 S.Ct. 174, 176, 83 L.Ed. 151; In re Quarles and Butler, 158 U.S. 532, 15 S.Ct. 959, 39 L.Ed. 1080; Vogel v. Gruaz, 110 U.S. 311, 316, 4 S.Ct. 12, 14, 28 L.Ed. 158. The purpose of the privilege is the furtherance and protection of the public interest in effective law enforcement. The privilege recognizes the obligation of citizens to communicate their knowledge of the commission of crimes to law-enforcement officials and, by preserving their anonymity, encourages them to perform that obligation.

\* \* \* \* \* \*

"A further limitation on the applicability of the privilege arises from the fundamental requirements of fairness. Where the disclosure of an informer's

identity, or of the contents of · his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way. In these situations the trial court may require disclosure and, if the Government withholds the information, dismiss the action. \* \* \*

\* \* \* \* \* \*

"We believe that no fixed rule with respect to disclosure is justifiable. The problem is one that calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense. Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors." 353 U.S. at 59, 77 S.Ct. at 627.

■ In order to determine if fairness to defendant dictates the disclosure of the informant's identity, one must ask: what purpose would be served by the disclosure? Kelly at·first denied any knowledge of the satchel and then 'later he said that it had been left by a friend from California whose name he could not remember. According to testimony of Officer Gardiner regarding Kelly's statements:

"\* \* \* I asked where he had obtained the contents of the bag and the bag, and he replied a friend of his from California had brought them to him. Asked him if he wanted them and he had taken them. When I asked him the name of this friend he indicated he didn't know it. I asked why a man give this to you under these conditions, and he had no answer. He said he didn't know why, but he didn't look a gift horse in the mouth, \* \* \*."

Defendant did not take the stand, and did not present any evidence to the effect that he did not know the narcotics found were there. Therefore, his contention that he was deprived of a defense was not well founded.

■ Kelly was charged solely with illegal possession of narcotics. There is sufficient evidence to indicate that Kelly knew· of the presence of the drugs in the residence. Kelly showed the investigating officer where his "fixing" kit was located. Officer Gardiner testified:

"A I begin to discuss by asking Mr. Kelly about the contents of the brown leather bag which had been found in the storage room of the home where he was living, and I asked him first, I believe, why he had kept the empty vials inside of the bag instead of disposing · of · them, and he told me that as he · used the items up—the contents of

the vials—he would put the empty back into the bag because he didn't want to individually dispose of them for fear of somebody possibly seeing them in the garbage or particularly paying attention to this if it were repeated numbers of time. He was making an effort to keep them all in a bag, and when he was finished with the use of the bag he would distroy [sic] them on one occasion. I asked what he had used first. I believe he told me that he had started with the dilaudid if I am not mistaken. He indicated that inside the bag there was a paper packet —I believe he referred to it in this term, a cocaine he had been saving, and I asked why, and he said because . it came closest to giving him the high feeling or sensation, and he was saving it."

The facts of this case do not show that defendant was prejudiced by the refusal of the state to reveal the identity of its informer—especially in light of the crime charged—viz., illegal possession of narcotics. No purpose could have been served by revealing the informer's identity, and therefore, an exception to the "informer's privilege" was properly refused.

Judgment affirmed.

LOCKWOOD, C. J., STRUCKMEYER, V. C. J., and UDALL and BERNSTEIN, JJ., concurring.