450 P.2d 708

**The STATE of Arizona, Appellee,**
**v.**
**Billy Morris ALLEN, Appellant.**
**No. I CA–CR 185.**

Court of Appeals of Arizona.
Feb. 24, 1969.

Gary K. Nelson, Atty. Gen., by Carl Waag and Thomas M. Tuggle, Asst. Atty. Gen., for appellee.

Sheldon Stern, Phoenix, for appellant.

DONOFRIO, Chief Judge.

Appellant, Billy Morris Allen, hereinafter referred to as defendant, was charged with the crime of illegal possession of narcotic drugs for sale. Defendant was convicted of the crime and put on probation for five years. A motion for a new trial and/or an arrest of judgment and for a directed verdict of acquittal, notwithstanding the jury verdict, was made and denied.

On the 19th of November, 1965, an officer of the Phoenix Police Department, working on a narcotics detail, received information from a confidential informer that the informer had purchased some heroin from one Alfreda White, and that Alfreda White was running a "shooting gallery", a place where narcotics are sold to be consumed on the premises. The officer applied for a search warrant to search Alfreda White's residence. He signed an affidavit deposing that he had just and probable cause to believe, and that he did believe that narcotics were in the possession of Alfreda White at Apartment 4, 644 South Second Street, Phoenix, Maricopa County, Arizona. He then set forth all the facts which were the basis for his belief. These facts included the information from the confidential informant that Alfreda White had a narcotics record; that she was known to be involved with illegal narcotics in the past; that she was living with a man just recently convicted of a narcotics charge; and that known addicts were frequenting the residence of Alfreda White. The Justice of the Peace issued the search warrant.

With the warrant in their possession, the police entered the premises described in the warrant. In one of the bedrooms they found the defendant and a woman companion lying in a bed. The defendant was wearing only his shorts. In the bedroom where the defendant was found, there was also found a small bottle containing 29 capsules of opiates, a wooden jewelry box containing two hypodermic needles, two one-pound cans of milk sugar, a substance used to dilute heroin, and under the mattress where the defendant was lying, on the same side as that previously occupied by defendant, there was found one blue and white cardboard box and one black wallet containing $250 in cash. Defendant admitted that the wallet belonged to him. Inside the cardboard box there was found 26 individually wrapped paper packets of a gray powdered opiate. No opiates, narcotics or paraphernalia used to administer narcotics were found on the person of the defendant, or in the clothes later worn by defendant.

The defendant raises two issues on appeal. First, was the search warrant valid, and if not, should the lower court have granted defendant's motion to suppress the evidence obtained by use of the search warrant? Second, defendant raises the question as to whether there was sufficient evidence against him upon which the jury could find him guilty of the charge of illegal possession of narcotics for sale.

## VALIDITY OF THE SEARCH WARRANT AND MOTION TO SUPPRESS

The State contends that the defendant, being only an invitee in the premises and claiming no control over those premises, has no standing to raise the issue of legality of the search. The United States Supreme Court, in the case of Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L. Ed.2d 697, 78 A.L.R.2d 233 (1960), made a major liberalization in the rules applied to standing to object in the field of search and seizure.

In the *Jones* case the defendant was prosecuted for illegal possession of narcotics. At the hearing on the motion to suppress, the uncontroverted evidence showed that the apartment in which defendant and the narcotics were found belonged to a friend who had given defendant permission to use the apartment. Defendant had a suit and shirt at the apartment, and had not slept there for more than a night. The court pointed out that in order to qualify as a person aggrieved by an unlawful search and seizure, and thus have standing to object to the admission of the fruits of such a search, the plaintiff must have been a victim of the search and seizure. It must be shown that the search was directed against the defendant as distinguished from merely being "prejudiced only through the use of evidence gathered as a consequence of a search or seizure directed at someone else." 362 U.S. 257, 261, 80 S.Ct. 725, 731.

■ We find no meaningful distinction between the defendant in the *Jones* case and the defendant in the case presently before this Court. Jones was found to be in fact a person aggrieved by an unlawful search and seizure and as such he had a right to question the validity of the search and seizure which resulted in a criminal charge for the unlawful possession of narcotics. It is this Court's feeling that the law should not preclude the defendant in this case from attempting to suppress the evidence for lack of standing.

■ While there are many state cases to the contrary, the following was clearly pointed out by the United States Supreme Court in a recent case:

"* * * For the Fourth Amendment protects people, not places. What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection. See Lewis v. United States, 385 U.S. 206, 210, 87 S.Ct. 424, 427, 17 L. Ed.2d 312; United States v. Lee, 274 U. S. 559, 563, 47 S.Ct. 746, 748, 71 L.Ed. 1202. But what he seeks to preserve as private, even in an area accessible to the public, may be constitutionally protected. See Rios v. United States, 364 U.S. 253, 80 S.Ct. 1431, 4 L.Ed.2d 1688; Ex Parte Jackson, 96 U.S. 727, 733, 24 L.Ed. 877."

Katz v. United States, 389 U.S. 347, 351, 352, 88 S.Ct. 507, 511, 19 L.Ed.2d 576 (1967).

■ It has been accepted without question that the holding in the *Jones* case gives an invitee standing to question the validity of a search warrant and a search. In the case of Texas v. Gonzales, 5 Cir., 388 F.2d 145 (1968), the court felt that a guest at an apartment of another had standing to question the lawfulness of a search and seizure. It was pointed out that any other contention would clearly fly in the face of the law espoused in the *Jones* case. This doctrine was recently reiterated by the United States Supreme Court in Katz v. United States, supra, as a general rule, citing no other authority than the *Jones* case.

■ Once it is determined that the defendant has standing to question the search warrant, it is then necessary for this Court to determine whether the procedure for a valid search has been substantially followed, and whether there were sufficient grounds on which a search warrant could be issued. It must be kept in mind that there is a presumption in favor of the validity of a search warrant. State v. Kelly, 99 Ariz. 136, 407 P.2d 95 (1965).

The defendant in his motion to suppress depended entirely on the transcript at the preliminary hearing, rather than on any evidence which could have been introduced in a hearing on a motion to suppress. On appeal there was no objection that the procedure established in A.R.S. § 13–1441 to § 13–1454 was not followed. A reading of the transcript evidences no prejudicial deviation from the prescribed procedure.

■ We now reach the question of whether there was a lack of showing of probable cause to issue a search warrant. A lack of probable cause would require

this Court to find an unreasonable search and seizure. We reiterate that we are limited to the affidavit filed and the testimony at the preliminary hearing since this is what the defendant relied upon in his motion to suppress.

▇▇▇▇ This Court is of course bound by decisions of the Supreme Court of the United States interpreting the Constitution of the United States. State v. Sherrick, 98 Ariz. 46, 402 P.2d 1 (1965). It is also quite clear that evidence obtained in violation of rights guaranteed by the Constitution of the United States is not admissible in a prosecution by the state, in a state court, against an individual whose rights have been violated. Mapp v. Ohio, 367 U. S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081, 84 A.L.R.2d 933 (1961); State v. Pina, 94 Ariz. 243, 383 P.2d 167 (1963). The United States Supreme Court has spelled out with some particularity the prerequisites for a valid search warrant. This is so as not to violate the right of an individual to be free from unreasonable searches and seizures. The case of Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), sets out the tests to determine if probable cause was shown to the magistrate to validate a search warrant.

"Although an affidavit may be based on hearsay information and need not reflect the direct personal observations of the affiant, Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697, [78 A. L.R.2d 233], the magistrate must be informed of some of the underlying circumstances from which the informant concluded that the narcotics were where he claimed they were, and some of the underlying circumstances from which the officer concluded that the informant, whose identity need not be disclosed, see Rugendorf v. United States, 376 U.S. 528, 84 S.Ct. 825, [11 L.Ed.2d 887], was 'credible' or his information 'reliable.' * * *" 378 U.S. 108 at pages 114, 115, 84 S.Ct. at page 1514.

▇▇▇▇ The United States Supreme Court has recently ruled that the magistrate may take into consideration the amount of detail set out in the affidavit when determining the reliability of the information received.

"In the absence of a statement detailing the manner in which the information was gathered, it is especially important that the tip describe the accused's criminal activity in sufficient detail so that the magistrate may know that he is relying on something more substantial than a casual rumor circulating in the underworld or an accusation based merely on an individual's general reputation."
Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 589, 21 L.Ed.2d 637 (1969).

▇▇▇▇ The underlying circumstances in this case, which were made known to the magistrate, were that a confidential informant had, on the same day as the issuance of the warrant, purchased from a resident of the apartment a usable amount of heroin; that this resident had told the confidential informant that she was running a "shooting gallery", a place where narcotics are sold to be consumed on the premises; that this seller was a known narcotics user; that known addicts visited the apartment frequently; and that the seller was living with a man who was recently convicted on a narcotics charge.

We can compare the detail provided in the case of Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959), which was acceptable to the court, with the lack of specificity evidenced in Spinelli v. United States, supra. It is the feeling of this Court that a magistrate confronted with such detail as was put before him in the present case could reasonably infer that the informant had gained his information in a reliable manner. We therefore hold that the search warrant and the search which was the result of this warrant was not an unconstitutional exercise of police power and did not violate any rights of the defendant.

▇▇▇▇ We feel that these underlying circumstances give a substantial basis for the finding of probable cause by the magis-

trate. It must be remembered that evidence to sustain a finding of probable cause need not be as judicially competent or of such persuasive character as is necessary to justify an officer in acting on his own without a warrant. Jones v. United States, supra.

We find probable cause, realizing that our Court has a two-fold purpose. It must vindicate individual liberties and thereby strengthen the administration of justice by promoting a respect for law and order, and it must sanction the activities of law enforcement officers who follow the correct constitutional procedure. Although there may have been some technical errors in the search warrant, we are guided in our decision by the Arizona Constitution, A.R.S.

> "The pleadings and proceedings in criminal causes in the courts shall be as provided by law. No cause shall be reversed for technical error in pleading or proceedings when upon the whole case it shall appear that substantial justice has been done." Art. 6, § 22.

Consistent with this are the words of the United States Supreme Court when they recently stated:

> "* * * If the teachings of the Court's cases are to be followed and the constitutional policy served, affidavits for search warrants, such as the one involved here, must be tested and interpreted by magistrates in courts in a common sense and realistic fashion. They are normally drafted by nonlawyers in the midst and haste of a criminal investigation. Technical requirements of elaborate specificity once exacted under common law pleadings have no proper place in this area. A grudging or negative attitude by reviewing courts toward warrants will tend to discourage police officers from submitting their evidence to a judicial officer before acting."

United States v. Ventresca, 380 U.S. 102, 108, 85 S.Ct. 741, 746, 13 L.Ed.2d 684 (1965).

## SUFFICIENCY OF THE EVIDENCE

Defendant argues that all the evidence shows only that he was merely present at a place where narcotics were found. It is a correct statement of the law that the mere presence of the defendant where narcotics are found is insufficient to establish that he knowingly possessed or exercised dominion and control over the narcotics. State v. Van Meter, 7 Ariz. App. 422, 440 P.2d 58 (1968). We have in this case evidence of more than mere presence at the premises where narcotics were found.

The defendant was not only in the house in which a considerable quantity of narcotics was found, but he was found undressed in a bed, giving the appearance of living at the residence. Under the mattress of the bed in which he was lying the police found defendant's wallet containing a large amount of money. The largest portion of the narcotics located in the house was found in the bedroom under the mattress where he was lying, in close proximity to his wallet. This house was known to be frequented by narcotics addicts, and there was at least one sale of heroin on the premises on the same day as the arrest. On appeal the facts are to be taken in the light most favorable to upholding the jury's verdict and all reasonable inferences from the evidence must be resolved against the appellant. State v. Blankenship, 99 Ariz. 60, 406 P.2d 729 (1965).

The jury could easily have concluded that the defendant hid the narcotics and the wallet under the bed in which he was sleeping. Since he had such a substantial amount of money and such a large quantity of narcotics in his possession, it would have been reasonable to presume that he was selling these narcotics, especially since this was a known "shooting gallery". It is not for this Court to weigh the likelihood of permissible inferences. The weight in effect to be attributed to the evidence is for the trier of fact. Allen v. State, 26 Ariz. 317, 225 P. 332 (1924).

We, as an appellate court, can reverse only on insufficiency of evidence when no reasonable man could be convinced of the guilt of the accused. State v. Davis & Sturgeon, 104 Ariz. 142, 449 P.2d 607 (Filed January 23, 1969). This is not the situation in the present case.

We find that there was a valid search warrant, and that there was sufficient evidence to sustain the jury's verdict.

Affirmed.

STEVENS and CAMERON, JJ., concur.