475 P.2d 756

**STATE of Arizona, Appellee,**

v.

**Harry A. SLEFKIN, Appellant.**

**No. 2 CA–CR 214.**

Court of Appeals of Arizona,
Division 2.

Oct. 26, 1970.

Rehearing Denied Nov. 19, 1970.
Review Denied Jan. 5, 1971.

Gary K. Nelson, Atty. Gen., by Carl Waag, Asst. Atty. Gen., Phoenix, for appellee.

Benjamin Lazarow, Tucson, for appellant.

HATHAWAY, Judge.

Slefkin was convicted of the crime of obtaining or attempting to obtain money or property by means of false or bogus check in violation of A.R.S. § 13–311. The matter was tried to a jury and the guilty verdict was returned on November 4, 1969. On appeal, it is contended that the trial court erred in denying the defense motion for a directed verdict based upon insufficiency of the evidence. A second question is directed to the trial court's failure to give a certain requested defense instruction. We will consider both questions after the following brief statement of facts which we have taken from the record, construing it most favorably to sustaining the verdict.

On December 23, 1967, a Saturday, at approximately 10:45 a. m., the appellant entered the Union Bank on Stone Avenue, Tucson, Arizona, the only bank open to the public at the time, in order to obtain a

cashier's check. Upon entering the bank, he approached Harry Chambers, a Vice President of the bank, and asked concerning the whereabouts of Jack Winn, the Executive Vice President. When Mr. Chambers informed the appellant that Mr. Winn was out of the bank, appellant explained that he needed a $7,000 cashier's check in order to close a real estate deal, and indicated to Mr. Chambers that he thought he had $11,000 in his account. Chambers escorted the appellant to the teller's window and instructed the teller, "This gentleman would like a cashier's check for $7,000. Will you help him. He will give you his number." Chambers then shook hands with the appellant, told him, "Give your account number and everything is fine," and departed.

Appellant then gave the teller a check in the sum of $9,600 to be deposited. The check was signed by one Philip Lhachinsky, M.D., and drawn on a Casa Grande branch of the Valley National Bank. He had not shown the check to Chambers. The teller gave the appellant a deposit slip for the $9,600 check and appellant drew a counter check for $7,000, which he gave to the teller. The teller then drew the $7,000 cashier's check, payable to one Angela Carleftes, pursuant to appellant's direction, and took it to a bank officer, John Richey, to obtain his signature of approval on the cashier's check. Richey was informed by the teller that "Harry Chambers has okayed this transaction." At no time during the entire transaction was appellant's checking account examined; if it had been, it would have been learned that his account had been closed on November 3, 1967.

As he left the bank with the cashier's check, the appellant advised the teller that he would return with Angela Carleftes in order to cash the check. He did later return, accompanied by a woman, and presented the check to the same teller that had previously waited on him. She took the check to Mr. Richey, who, together with Mr. Winn, informed appellant that the bank would not be able to allow him credit on the $9,600 check which he had deposited

prior to purchasing the cashier's check. The difficulty arose from the fact that the bank on which the deposited check had been drawn was closed for the weekend and could not be contacted for confirmation of the check. The appellant took the cashier's check, remarking that it was the property of Miss Carleftes as the result of the real estate transaction in which he was involved, and left the bank.

On the 26th of December, the day after Christmas, the Union Bank contacted the appropriate Valley National Bank office on which the $9,600 check had been drawn and discovered that it was no good. There was no Philip Lhachinsky, M.D., account, and the numbers on the check were fictitious. Further inquiry disclosed that no Philip Lhachinsky was listed in the city directory or in the phone book.

On the same day that the check was determined to be worthless, the cashier's check to Angela Carleftes was cashed in Coral Gables, Florida. When that check was processed through regular banking channels, the Union Bank was required to pay the face amount—$7,000.

■ The appellant complains specifically that the state's evidence fails to establish that the appellant had knowledge of the invalidity of the deposited check, and thus failed to prove the requisite intent to defraud. The statute under which the appellant was convicted, A.R.S. § 13–311, is directed against those who, "with intent to cheat and defraud" obtain money or property by the use of any false or bogus check. In determining whether proof of the requisite intent is present, we will consider the overall record, and direct our concern only to query whether there was substantial evidence in support of the verdict, State v. Bearden, 99 Ariz. 1, 405 P.2d 885 (1965).

■ The appellant's conduct indicates a carefully executed scheme which succeeded in extracting $7,000 from the bank. His approach to Chambers was accompanied by a misrepresentation that he had an account with a balance of $11,000, $4,000 more than adequate to meet the required cashier's

check. After he was accompanied by Chambers to the teller, with an indicated approval for issuance of the cashier's check premised upon the erroneous assumption that the appellant had an ample account balance, he then produced the bogus check for deposit. The teller proceeded on the assumption that the bogus check had been approved by Chambers as a sufficient basis for issuance of the cashier's check. This, together with the timing, a long weekend giving appellant an opportunity to operate protected by the impossibility of confirming the deposited check, when considered with the absence of any explanation for the bogus check, amply supports a conclusion that the appellant calculated and intended the transaction as it occurred. The evidence supports the verdict. State v. Beers, 8 Ariz.App. 534, 448 P.2d 104 (1968); State v. Allen, 9 Ariz.App. 196, 450 P.2d 708 (1969); State v. Hannon, 104 Ariz. 273, 451 P.2d 602 (1969); State v. Davis, 104 Ariz. 142, 449 P.2d 607 (1969).

■ The trial court refused to give the appellant's requested instruction number 3 as modified, which read as follows:

"Under statute 13–311 intent to defraud and knowledge of the insufficiency of funds at the time the check is issued are elements of the offense."

The court instructed on intent as follows:

"The words 'bogus check' mean a check given by a person upon a bank in which he has no funds, and which he has no reason to suppose will be honored."

"Thus in the crime of passing a bogus check, a necessary element is the existence in the mind of the perpetrator at the time of his acts, his specific intent to defraud, and unless such intent so exists, no crime is committed.

In considering the matter of intent, bear in mind it must be proved like any other element of the offense charged, beyond a reasonable doubt, and to your satisfaction. The question of intent is a matter for you, as jurors, to determine, and as intent is a state of mind, it is not possible to look into a man's mind to see what

went on. The only way you have of arriving at the intent of the Defendant in this case is for you to take into consideration all of the facts and circumstances shown by the evidence, including the exhibits, and determine from all such facts and circumstances what the intent of the Defendant was at the time in question."

The jury was further instructed:

"Also, if the evidence is susceptible of two reasonable interpretations, one of which points to the Defendant's guilt and the other to his innocence, it is your duty to adopt the interpretation which points to the Defendant's innocence, and reject the other which points to his guilt. If, on the other hand, one interpretation of the evidence appears to you to be reasonable and the other interpretation to be unreasonable, it would be your duty to accept the reasonable interpretation and to reject the unreasonable."

The state takes the position on appeal that, although the appellant's requested instruction was correct, it was unnecessary because covered by the other instructions. We agree.

Affirmed.

HOWARD, C. J., and KRUCKER, J., concur.