## STELLA v. GRAHAM-PAIGE MOTORS CORP. et ano.

United States District Court
S.D. New York.

May 13, 1952.

Lewis M. Dabney, Jr., and Anderson & Carew, New York City, Murray C. Bernays, New York City, of counsel, for plaintiff.

Garey & Garey, New York City, William Francis Corson, William Helfer, and Edward T. Perry, New York City, of counsel, for defendant Graham-Paige Motors Corp.

Roger S. Foster, Washington, D. C., Myer Feldman, Washington, D. C., of counsel, for Securities and Exchange Commission, amicus curiae.

SAMUEL H. KAUFMAN, District Judge.

Plaintiff, a stockholder of Kaiser-Frazer Corporation, sues Graham-Paige Motors Corporation to recover profits realized by said defendant upon the purchase and sale within less than six months of 155,000 shares of Kaiser-Frazer stock (§ 16(b) of the Securities Exchange Act of 1934, 15 U.S.C.A. § 78p(b)), and said defendant moves for summary judgment or for judgment on the pleadings.

The complaint, filed on July 26, 1949, alleges in substance that on February 10, 1947, Graham-Paige purchased 750,000 shares of the common stock of Kaiser-Frazer; that by said purchase, Graham-Paige became the beneficial owner of more than 10% of Kaiser-Frazer common stock, since there were 4,750,000 shares of such stock then outstanding; that within less than six months from the date of the purchase of the 750,000 shares, Graham-Paige sold 155,000 of said shares and realized a profit from such sale in excess of $434,787.86;

that because of the provisions of the Securities Exchange Act of 1934, 15 U.S.C. A. § 78a et seq., the profit realized by Graham-Paige is recoverable by Kaiser-Frazer; that plaintiff's written request to Kaiser-Frazer that it bring an action to recover said profits was rejected with the statement that if plaintiff desired to bring suit, Kaiser-Frazer would have no objection because the sixty-day period of notice to the corporation provided by § 16(b) had not yet expired; wherefore plaintiff prays that Kaiser-Frazer recover judgment against Graham-Paige for the profits realized from the transactions with interests, costs, disbursements and a reasonable attorney's fee.

The answer of Graham-Paige admits the acquisition of more than 750,000 shares of Kaiser-Frazer common stock; admits that on February 10, 1947, Kaiser-Frazer had outstanding 4,750,000 shares of common stock, and that on that date Graham-Paige owned more than 750,000 shares of said stock; admits ownership of more than 10% of the stock, and that 155,000 shares were sold by it; admits that in certain of its records a profit item of $434,787.86 appeared, based upon values assigned for such stock, but denies that any profit was realized from the acquisition and sale of that stock.

From the affidavits and exhibits filed in this proceeding, it appears that Kaiser-Frazer Corporation, upon its organization in 1945, had a capital structure consisting of 500,000 shares of common stock. Of these shares, 250,000 were issued to Graham-Paige and 250,000 to interests controlled by Henry J. Kaiser. On September 26, 1945, an issue of 1,700,000 new shares of Kaiser-Frazer stock was sold to the public, diluting the ownership of Graham-Paige and the Kaiser interests so that each owned 11.34% of the outstanding stock. An additional issue of 1,800,000 new shares was sold to the public on January 23, 1946. Prior to and up to the time of this sale, Graham-Paige still retained 250,000 shares, or 11.34% of the outstanding stock, while the holdings of the Kaiser interests had increased to 325,000 shares, or 14.77% of the stock outstanding. The result of the public sale of 1,800,000 shares on January 23, 1946 was to reduce Graham-Paige's holdings to 6¼% of the outstanding shares. The Kaiser interests acquired on such public offering an additional 45,000 shares, thereby increasing their ownership to 370,000 shares, or 9.25% of the shares outstanding. The purchase of 750,000 shares by Graham-Paige on February 10, 1947, which increased its holdings to 21%, was in pursuance of an agreement under which these shares were placed in a voting trust of which Kaiser and Joseph W. Frazer, an officer of Graham-Paige, were the voting trustees. The sale of the 155,000 shares, the transaction out of which this suit arose, occurred on August 9, 1947.

The problem presented by this motion is one of novel impression, the solution of which is dependent upon the interpretation of § 16(b) of the Securities Exchange Act of 1934. Section 16(b) provides:

"For the purpose of preventing the unfair use of information which may have been obtained by such beneficial owner, director, or officer by reason of his relationship to the issuer, any profit realized by him from any purchase and sale, or any sale and purchase, of any equity security of such issuer (other than an exempted security) within any period of less than six months, unless such security was acquired in good faith in connection with a debt previously contracted, shall inure to and be recoverable by the issuer, irrespective of any intention on the part of such beneficial owner, director, or officer in entering into such transaction of holding the security purchased or of not repurchasing the security sold for a period exceeding six months. Suit to recover such profit may be instituted at law or in equity in any court of competent jurisdiction by the issuer, or by the owner of any security of the issuer in the name and in behalf of the issuer if the issuer shall fail or refuse to bring such suit within sixty days after request or shall fail diligently to prosecute the same thereafter; but no such suit shall be brought more than two years after the date such profit was

realized. This subsection shall not be construed to cover any transaction where such beneficial owner was not such both at the time of the purchase and sale, or the sale and purchase, of the security involved, or any transaction or transactions which the Commission by rules and regulations may exempt as not comprehended within the purpose of this subsection."

The phrase "such beneficial owner" in the first sentence of § 16(b) refers to § 16 (a) which declares:

"Every person who is directly or indirectly the beneficial owner of more than 10 per centum of any class of any equity security (other than an exempted security) which is registered on a national securities exchange * * *."

Gratz v. Claughton, 2 Cir., 1951, 187 F.2d 46; Park & Tilford, Inc., v. Schulte, 2 Cir., 1947, 160 F.2d 984.

Graham-Paige contends that the purchase and sale involved in this action were exempt from the sanction imposed by § 16 (b) because it was not the beneficial owner of more than 10% of Kaiser-Frazer stock both at the time of purchase and sale. Plaintiff argues that the exemption contained in the last sentence of § 16(b) is inapplicable to the present transaction, a view which finds support in the brief filed by the Securities and Exchange Commission as *amicus curiae*. Plaintiff further declares that the close relationship between Graham-Paige and the Kaiser interests was such as to constitute them collectively a "person" within the meaning of § 3(a)(9) of the Securities Exchange Act of 1934, 15 U.S.C.A. § 78c(a)(9), and that, therefore, Graham-Paige was actually the beneficial owner of more than 10% of Kaiser-Frazer stock before February 10, 1947.

There is an ambiguity in the exemption provision of § 16(b). It declares:

"This subsection shall not be construed to cover any transaction where such beneficial owner was not such both at the time of the purchase and sale, or the sale and purchase, of the security involved * * *."

Do the words "at the time" mean "prior to", which is the contention of defendant Graham-Paige, or do they mean "simultaneously with", the theory advanced by plaintiff and the Securities and Exchange Commission?

The purpose of Congress is a dominant factor in the determination of a statute's meaning, United States v. C. I. O., 1948, 335 U.S. 106, 112, 68 S.Ct. 1349, 92 L.Ed. 1849, and where a choice may be made between two possible constructions, that construction should be chosen which would serve to effectuate Congressional purpose rather than defeat it. "However well [rules of statutory interpretation] may serve at times to aid in deciphering legislative intent, they long have been subordinated to the doctrine that courts will construe the details of an act in conformity with its dominating general purpose, will read text in the light of context and will interpret the text so far as the meaning of the words fairly permits so as to carry out in particular cases the generally expressed legislative policy." Securities and Exchange Commission v. C. M. Joiner Leasing Corp., 1943, 320 U.S. 344, 350–351, 64 S.Ct. 120, 123, 88 L.Ed. 88.

Although the legislative history of § 16(b) fails to afford a clue as to the precise meaning of the words "at the time", the Congressional purpose underlying the enactment of this section is clear. It was "to protect the outside stockholders against at least short-swing speculation by insiders with advance information." Shaw v. Dreyfus, 2 Cir., 1949, 172 F.2d 140, 142; Park & Tilford, Inc., v. Schulte, supra, 160 F. 2d at page 987.

If the construction urged by defendant is placed upon the exemption provision, it would be possible for a person to purchase a large block of stock, sell it out until his ownership was reduced to less than 10%, and then repeat the process, ad infinitum. A construction such as this would provide a way for the evasion of § 16(b) by principal stockholders, and render it largely ineffective to prevent some of the financial evils which led to the passage of this legislation by Congress.

Conversely, if the words "at the time" are construed to mean "simultaneously with", a shareholder would become subject to the provisions of § 16(b) as soon as his ownership exceeded 10% of the outstanding shares. This construction would be consistent with the declared purpose of the statute to prevent the unfair use of inside information by officers, directors, or stockholders owning more than 10% of the equity stock.

Assuming that a shareholder becomes subject to the liability imposed by the statute immediately upon becoming the owner of more than 10% of the equity shares of a corporation, it would appear that the exemption provision was intended "to exclude the second sale in a case where 10% is purchased, 5% sold within three months and the remaining 5% a month later." Seligman, Problems Under the Securities Exchange Act, 21 Va.L.Rev. 1, 20 (1934).

██ The construction of a statute by an agency charged with its administration is entitled to great weight. United States v. American Trucking Association, 1940, 310 U.S. 534, 549, 60 S.Ct. 1059, 84 L.Ed. 1345, and the Securities and Exchange Commission maintains that it has consistently regarded the purchase by which a shareholder achieved a 10% interest in the corporation as bringing him within the purview of § 16(b). To support this contention it cites Rule NB2, 17 Code Fed.Regs. § 240.16b–2 (1949), which exempts certain underwriting transactions from the effect of the statute. This exemptive rule, it reasons, would not have been necessary unless § 16(b) were construed by the Commission to apply to a shareholder immediately upon acquiring more than 10% of a corporation's stock. While this is not a conclusive demonstration that the Commission so interpreted the statute, it may be observed that the likelihood that this construction of the exemption provision of § 16(b) would constitute a bar to the underwriting of stock, was pointed out shortly before the adoption of the first version of the Rule in 1935.[1]

Because the interpretation of the statute advocated by plaintiff and the Commission is accepted, it is unnecessary to decide whether or not a genuine issue of fact is created by the contention that defendant Graham-Paige owned more than 10% of Kaiser-Frazer stock prior to February 10, 1947.

Motion denied. Settle order on notice.

1. See Seligman, *loc. cit. supra* at 20: "Attention should be called to the fact that under this construction of the Act, unless and until the Commission issues rules to the contrary, a bar to any substantial stock financing is created if the stock is registered."