440 P.2d 58

STATE of Arizona, Appellee,

v.

Frank David VAN METER, Jr., Appellant.

No. 1 CA–CR 143.

Court of Appeals of Arizona.

April 23, 1968.

Rehearing Denied May 27, 1968.

Review Denied July 9, 1968.

Darrell F. Smith, Atty. Gen., T. M.
Pierce, Norval C. Jesperson, Asst. Attys.
Gen., for appellee.

Gerald Francis Sullivan, Phoenix, for
appellant.

DONOFRIO, Judge.

On April 5, 1967, in search of marijuana, three Tempe police officers armed with a search warrant entered a Tempe apartment where the defendant Frank David Van Meter, Jr. and his roommate resided. Officer Douglas handed defendant the search warrant and sought his cooperation in finding the marijuana. He was not advised of his constitutional rights. Defendant then showed the officers a bag of marijuana located in a cabinet in the living room of the apartment. The officers, on their own, searched the apartment and found cigarette butts containing traces of marijuana, a pipe containing traces of marijuana, and a cigarette-rolling machine. There had been no attempt to hide these items. An information was filed in the Superior Court of Maricopa County charging defendant with illegal possession of marijuana, a felony. The arraignment was held May 23, 1967, at which time defendant pleaded not guilty. Prior to trial defendant filed a motion to suppress the evidence obtained in the search of the apartment, and requested a hearing. This motion to suppress was heard and denied. Trial was had and defendant found guilty by a jury. On August 3, 1967 he was

given one year's probation on the condition, among other things, that he serve four months in the county jail.

Defendant's main contention is that the marijuana found in his apartment should not have been admissible at the trial because the search warrant used by the officers was not valid, and secondly, because part of the marijuana was found as a result of a conversation had with defendant before he had been advised of his constitutional rights. Defendant also raises questions as to whether there was sufficient evidence to show appellant knew the marijuana was in his apartment and whether or not it was error for the County Attorney to ask a witness to relate conversations had with defendant when such conversations were ordered suppressed.

## VALIDITY OF SEARCH WARRANT

The search warrant was issued by the magistrate on the strength of an affidavit signed by Officer Douglas. In that affidavit Douglas stated that the crime of unlawful possession of narcotic drugs and dangerous drugs was committed by Frank D. Van Meter, Jr., residing at a Tempe, Arizona address. He further stated that within the preceding 24 hours a reliable informant had provided the affiant with information that there was just, probable and reasonable cause to believe that Frank D. Van Meter, Jr. had in his possession at his apartment a usable amount of narcotic drugs and dangerous drugs. The pertinent portion of the affidavit reads as follows:

"2. That on or about the 5th day of April, 1967, in the city of Tempe, County of Maricopa, State of Arizona, the crime of unlawful possession of narcotic drugs and dangerous drugs was committed by Frank D. Van Meter, residing at 1021 Scovel St. Tempe, Arizona in the matter following, to wit: A reliable informant has provided the affiant with information that Frank D. Van Meter has in his possession at his home located at 1021 Scovel, Tempe, Arizona, a usable amount of narcotic drugs & dangerous drugs.

"3. That affiant has, and there is just, probable and reasonable cause to believe, that there are now in the possession of Frank D. Van Meter, and in and upon the premises and building known and designated as 1021 Scovel Street, Tempe, Arizona, * * *"

The landmark case in the field of the sufficiency of probable cause for a search warrant is Aguilar v. State of Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964). Aguilar held that Fourth Amendment standards are equally applicable to the states through the Fourteenth Amendment. The Fourth Amendment states:

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." (Emphasis supplied)

A.R.S. § 13–1443, states:

"No search warrant shall be issued except on probable cause, supported by affidavit, naming or describing the person, and particularly describing the property and place to be searched."

In interpreting the sufficiency of an affidavit in support of a search warrant, in Aguilar the United States Supreme Court said:

"Although an affidavit may be based on hearsay information and need not reflect the direct personal observation of the affiant (citation omitted) the magistrate must be informed of some of the underlying circumstances from which the informant concluded that the narcotics were where he claimed they were, and some of the underlying circumstances from which the officer concluded that the informant, whose identity need not be disclosed, (citation omitted) was 'credible' or his information 'reliable'. * * *"

The United States Supreme Court the following year in the case of United States v. Ventresca, 380 U.S. 102, 85 S.Ct. 741, 13

L.Ed.2d 684 (1965), interpreted the *Aguilar* case. In that case the affidavit of a government investigator failed to indicate which facts alleged in support of a search warrant were hearsay and which were within his personal knowledge. The Court said:

"  *  *  * A grudging or negative attitude by reviewing courts toward warrants will tend to discourage police officers from submitting their evidence to a judicial officer before acting.

"This is not to say that probable cause can be made out by affidavits which are purely conclusory, stating only the affiant's or an informer's belief that probable cause exists without detailing *any* of the 'underlying circumstances' upon which that belief is based. * * * Although in a particular case it may not be easy to determine when an affidavit demonstrates the existence of probable cause, *the resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants.* Jones v. United States, supra [362 U.S. 257], at 270 [80 S.Ct. 725, 4 L.Ed.2d 697]." (Emphasis supplied)

Therefore the Supreme Court of the United States has narrowly construed its holding in Aguilar v. State of Texas, supra, and has established a presumption of the regularity of search warrants. The Arizona case of State v. Kelly, 99 Ariz. 136, 407 P.2d 95 (1965) stated that "there is a presumption in favor of the validity of a search warrant." 99 Ariz. at 140, 407 P.2d at 97. The Court of Appeals of this state has reiterated the rule in State v. McMann, 3 Ariz. App. 111, 412 P.2d 286 (1966). The latest pronouncement on the subject has been made by the United States Court of Appeals, 9th Circuit, in the case of Sherrick v. Eyman, 389 P.2d 648 (decided February 7, 1968). The case concerned a petition for writ of habeas corpus following a conviction of first degree murder in the Superior Court of Arizona. The conviction was affirmed by the Supreme Court of Arizona and Sherrick's petition for a writ of habeas corpus was denied. In reviewing the Supreme Court of Arizona's decision that the search in that case was justified, the United States Court of Appeals stated as follows:

"  *  *  * The petitioner says that because insufficient facts to show probable cause for a warrant were not contained in the policeman's affidavit accompanying his application for a warrant the warrant issued by the magistrate was invalid. The Supreme Court of Arizona held that the fact, as testified to by both the policeman and the magistrate, that the magistrate examined the policeman under oath 'to determine if there's probable cause for the warrant to issue' and then issued the warrant, satisfied the requirement of the Fourth Amendment that ' * * * no warrants shall issue but upon probable cause supported by oath or affirmation * * *.'" The court discussed the teachings of Aguilar v. State of Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964) and United States v. Ventresca, 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965). The court then said:

"'The testimony of the police officers and the magistrate indicates that information was given to the magistrate under oath, in addition to the affidavit. This procedure differs from that under Rule 41(c), Federal Rules of Criminal Procedure, where the affidavit is the sole basis upon which the determination of probable cause is made. If we had before us only the affidavit we would undoubtedly be bound to conclude under the case of Aguilar v. State of Texas, supra, that it was insufficient. It would have been advisable for the magistrate to have a transcript made of the officer's testimony, which he gave in addition to the affidavit, and he should have recited on the record what facts presented to him constituted 'probable cause.' This deficiency we do not deem fatal under the circumstances herein as there is evidence in the record showing what was presented to the magistrate prior to the warrant in question being issued.'

"We think the Supreme Court of Arizona was right. The Fourth Amendment does not require that the oath or affirmation of the truth of the statements of facts constituting probable cause must be attached to a written document. The purpose of the Fourth Amendment, to interpose a neutral judicial officer between the zeal of the policeman and the privacy of the citizen, is served by the examination of the policeman, under oath, by the magistrate. As the Supreme Court of Arizona said, it would have been advisable for the magistrate to have proceeded differently in this case. But our question is not whether what was done was advisable, but only whether it was constitutional. We hold that it was."

The above cases are authority for the fact that a search warrant is presumed to be valid and that in determining whether the magistrate had probable cause in issuing the search warrant, other circumstances made known to the magistrate under oath, in addition to the assertions contained in the supporting affidavit, may be considered. In addition to the Sherrick v. Eyman, supra, case State v. Valenzuela, 3 Ariz.App. 278, 413 P.2d 788 (1966) supports the view that in Arizona the affidavit may be supplemented by verbal information given to the magistrate under oath. In relating this law to the facts in the instant case, we find that the affidavit contained the assertions made by a police officer that the crime of unlawful possession of narcotic drugs or dangerous drugs was committed by the defendant at his apartment within the last day, and this information was supplied by the informant who had been reliable in the past. In response to the motion to suppress the evidence obtained in the search, the County Attorney's office offered to show that in addition to this information given by Officer Douglas in the affidavit, the magistrate was informed that officers had received information that defendant had been selling drugs to various persons; that the informant mentioned in the affidavit had helped the Tempe police in the past;

that this informant had furnished reliable information at least half a dozen times in the past; and that the informant had seen the drugs in question in the defendant's apartment only hours prior to the presentation of the affidavit to the magistrate. All of this was sworn to under oath by the affiant, Officer Douglas, in the presence of the magistrate who issued the warrant.

We hold, therefore, that the search warrant issued by the magistrate in this case was supported by oath and affirmation sufficient to give probable cause that a search warrant should issue. Therefore the evidence obtained by the officers in a search of the apartment was admissible in evidence insofar as the validity of the warrant was concerned.

ADMISSIBILITY OF EVIDENCE

Certain statements made by the defendant at the apartment prior to the time the officers informed him of his constitutional rights were suppressed by the trial court. Defendant now contends that the marijuana and other evidence collected which was not suppressed should not have been admitted at the trial. The basis for this contention is that a package containing marijuana was discovered in a cabinet in the living room of the apartment after defendant had either told or shown the officers where it could be found. Since defendant's communications were ordered suppressed as involuntary by the trial judge, the defense counsel now claims that this package of marijuana discovered pursuant to the communications should also be suppressed and the other narcotics discovered should be suppressed as "fruits of the poisonous tree". In other words, defense counsel claims that since the statements of defendant led the police to the discovery of the bag of marijuana which prompted them to search the entire apartment, the finds are consequences of his involuntary statements and not admissible.

We cannot agree with this contention. It is true that evidence which

"stems from" the violation of an accused person's constitutional rights is inadmissible according to Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961). This doctrine has been followed by our court as recently as State v. Herman, 3 Ariz.App. 323, 414 P.2d 172 (1966). In the instant case, however, we do not believe the doctrine is involved. The officers entered the apartment with a search warrant, intent on searching for marijuana or other narcotic drugs in the apartment. It is difficult to say that the discovery of the items for which they were searching 'stemmed from' any communication by defendant. The items were not concealed and would not have escaped the officers' search. The fact that defendant communicated the location of one such item does not affect their admissibility. Any other result would be ludicrous since defendant could exclude incriminating evidence merely by communicating its location to officers who would discover it with or without the communication.

## POSSESSION

The defendant also contends that the mere presence of the defendant where narcotics or marijuana is found is insufficient to establish that he knowingly possessed or exercised dominion and control over the drugs. This is a correct statement of the law but it does not support the defendant's cause in the present case.

According to the the record, the narcotics were found not only in his presence, but in his apartment. The other occupant of the apartment was termed his "roommate". The items of evidence were found, not secluded, but in obvious places around the apartment where a person living in the apartment would have knowledge of their presence. On appeal the evidence will be considered in the light most favorable to support the verdict. We hold that the jury had sufficient evidence before it to conclude that defendant was guilty of knowingly possessing the narcotics in his apartment.

## QUESTIONS REGARDING SUPPRESSED CONVERSATIONS

As previously stated, the trial judge had suppressed the conversations of defendant with police officers when they entered his apartment. At the trial there was testimony as follows:

"Q Sergeant Douglas, after you initially confronted the defendant, did you explain to him your purpose there, sir?

"A Yes.

"Q What did you tell him?

"MR. SULLIVAN: If the Court please, I am going to object to any statement made to the defendant.

"THE COURT: I am assuming this is limited to any explanation of search warrant, is that correct?

"MR. QUARELLI: Yes, your Honor.

"THE COURT: Yes, he may go into that.

"MR. SULLIVAN: Let the record show my objection, if the Court please.

"THE COURT: Very well.

"Q Did you advise him, sir, the reason for your being there?

"A Yes.

"Q What did you tell him?

"A I told him I had a search warrant naming his residence, I was going to conduct a search. I told him that I had information and belief—

"MR. SULLIVAN: If the Court please—

"A (continuing)—there was marijuana present in the house. I told him my purpose there was not to violate anybody's privacy or go through everything but if he had the marijuana, that he should give it to me.

"MR. SULLIVAN: At this time, if the Court please—

"Q Did you conduct—

"MR. SULLIVAN: At this time, I object to that last statement and move it to be stricken. I believe that this was a matter that was gone into."

The trial judge sustained defense counsel's objection to this part of the conversation and instructed the jury "to disregard that portion of the answer and not hold it against defendant in any way". The court further elaborated, "In other words, you are to treat this matter as if you had not heard it or as if the statement had not been made." The defendant now contends that it was misconduct for the County Attorney to ask the witness concerning a conversation which had previously been suppressed on the grounds that the statements were made involuntarily.

In dealing with this question we first wish to comment that we do not believe it proper for an officer, or any witness for that matter, to continue answering a question when an attorney is attempting to interpose an objection. This is especially true in an area where the court has suppressed a conversation and there is danger that portions of the conversation may be included in the answer. We have, however, carefully read the transcript and do not find that any prejudicial error has been committed in this respect. It should be noted that the County Attorney in questioning along the lines that he did was trying to show the jury the physical procedure of carrying out the search warrant. He had not in fact asked for any communications made by defendant, but rather was seeking to ascertain what had been done and said by the police officers only. We believe the County Attorney had a valid purpose in his questioning. We do not find that the order previously entered to suppress involuntary statements was violated. The court adequately instructed the jury to disregard that portion of the testimony which might have had the effect contended by defense. We do not find that the words used were so prejudicial as to overcome these instructions.

### SENTENCE

In examining the record it appears that the sentence given defendant is somewhat incongruous. The Judge found defendant guilty of illegal possession of marijuana, a misdemeanor, and suspended the imposition of sentence for one year, placing defendant on probation subject to certain conditions. One of these conditions was that he "be confined in the Maricopa County Jail for a period of not less than Four (4) months at hard labor".

We can find no authority for giving both probation and a jail sentence for the crime denounced in A.R.S. § 36-1002.05, subsec. A of which the defendant was charged and adjudged guilty. The right to suspend the imposition of a sentence in a criminal case is regulated by statute, and can only be exercised in accordance with the terms of the statute. State v. Bigelow, 76 Ariz. 13, 258 P.2d 409, 39 A.L.R.2d 979 (1953); Smith v. State, 37 Ariz. 262, 293 P. 23 (1930); State v. McKelvey, 30 Ariz. 265, 246 P. 550 (1926); State v. Washington, 5 Ariz.App. 400, 427 P.2d 381 (1967). A.R.S. § 13-1657 relates to the suspension of the imposition of sentence and the granting of probation. Neither this statute nor the Rules of Criminal Procedure, and we have particularly considered Rule 341, 17 A.R.S., provides for a jail term in addition to probation.

The incarceration of a person in the county jail is the passing of a sentence and not the suspension thereof. The fact that the court terms it as a condition of probation does not render it any the less a sentence of imprisonment. No authority existing for the dual sentence imposed, it is illegal and must be set aside.

The sentence is vacated and the cause remanded with the direction that the defendant be resentenced by the court in accordance with the law. In all other respects the judgment is affirmed.

CAMERON, C. J., and STEVENS, J., concur.