**STATE of Iowa, Appellee,**

v.

**William A. WRIGHT, Appellant.**

**No. 54604.**

Supreme Court of Iowa.

Nov. 15, 1972.

Paul H. Kinion and John C. Platt, Cedar Rapids, for appellant.

Richard C. Turner, Atty. Gen., Raymond W. Sullins, Asst. Atty. Gen., Michael S. McCauley, County Atty., for appellee.

MASON, Justice.

William A. Wright appeals from judgment and sentence pronounced approximately 20 months after he was placed on probation following a plea of guilty. The appeal presents the question of the authority of trial courts in criminal proceedings to defer imposition of sentence and place a defendant convicted by verdict or guilty plea on probation.

October 5, 1968, a county attorney's information was filed charging Wright with the crime of adultery contrary to section 702.1, The Code. October 17 Wright, represented by counsel, appeared for arraignment and entered a plea of not guilty to the charge. February 6, 1969, defendant again appeared with counsel, withdrew his plea of not guilty and entered a plea of guilty. Upon inquiry of defendant, his counsel and the prosecuting attorney the court was told defendant's plea was a negotiated plea. The court then advised defendant of the possible maximum penalty upon conviction of the crime and, for the purpose of making the constitutionally required determination that defendant's guilty plea was truly voluntary, the court interrogated defendant in accordance with the guidelines set forth in State v. Sisco, 169 N.W.2d 542, 547–552 (Iowa 1969). The guilty plea was accepted and time for pronouncing sentence was set for 4 p. m. the same day.

However, instead of sentencing defendant at that time, the trial judge "determined that a fuller investigation * * * [was] required in order to determine the proper sentence herein and that execution of judgment or sentence should be withheld and probation granted to defendant in accordance with the provisions of section 247.20."

He then ordered the "time of sentence herein" be continued until March 1, 1970, and that "pending sentence herein" defendant be placed on probation.

April 5, 1969, the court ordered defendant to pay $65 each week for the benefit of his wife and minor children as a condition of his probation.

August 4, 1969, the court changed the date of sentencing from March 1, 1970 to August 15, 1969, since defendant failed to make the support payments. This language appears in the court's order: "[T]ime of sentence was continued to March 1, 1970 with Defendant paroled * * *, pending sentence."

Neither defendant nor his lawyer appeared on August 15, 1969, for the purpose of sentencing and the court on August 16 authorized the issuance of a warrant for defendant's arrest.

October 7, 1970, defendant appeared with his attorney before the same trial judge who had paroled him. After being advised

upon inquiry that there was no lawful reason why judgment should not be imposed upon the defendant at that time, the court then sentenced Wright "to be confined in the State Penitentiary for a term of not more than three years."

I. In his one assignment of error defendant contends the court erred in "pronouncing judgment against * * * [defendant] on October 7, 1970, after first sentencing him on February 6, 1969, pursuant to the provisions of section 247.20 * * *, for the reason that said sentencing and procedures utilized by the court violated the provisions of chapter 789 * * * [The Code]."

Section 247.20, The Code, provides in part:

"Probation by court. The trial court before which any person has been convicted of any crime, * * * may by record entry at time of or after sentence is pronounced but before imprisonment, suspend the sentence and grant probation to said person during good behavior. The said court shall have authority by record entry to withhold execution of any judgment or sentence for such time as shall be reasonably necessary for an investigation with respect to suspension of sentence and probation. * * *."

Section 789.2, The Code, provides in part:

"Judgment of conviction—time for. Upon a plea of guilty, verdict of guilty, or a special verdict upon which a judgment of conviction must be rendered, the court must fix a time for pronouncing judgment, which must be at least three days after the verdict is rendered, if the court remains in session so long * * *; but in no case can it be pronounced in less than six hours after the verdict is rendered, unless defendant consent thereto."

Defendant argues that section 247.20 only authorizes the trial court to withhold execution of the sentence for a period of time reasonably necessary for a presentence investigation or an investigation concerning the suspension of a sentence already pronounced; this section does not permit the court to place a defendant on probation, without having first sentenced him, and then authorize "an investigation with respect to suspension of sentence and probation." He asserts the court thus violated section 247.20.

Defendant also maintains the court violated section 789.2 set out, supra. He argues although the order of February 6, 1969, purported to set the time of sentencing and judgment for March 1, 1970, this was not done because it was superseded by the court in granting defendant probation and later setting the terms and conditions thereof.

■ Defendant insists the court failed to ask him whether there was any legal cause why judgment should not have been pronounced against him on February 6, 1969, when he was placed on probation as is required by section 789.6, The Code. This section provides a defendant with the right of allocution. Its purpose is to elicit facts which would constitute reason for withholding sentence. State v. Mehuys, 172 N.W.2d 131, 135 (Iowa 1969).

■ Defendant's contentions that the court violated the provisions of chapter 789 are tenuous in view of the facts. What the court did in fact was to delay the imposition of any sentence and place defendant on probation pending sentence. Since sections 789.2 and 789.6 pertain only to the procedures to be followed in pronouncing judgment or sentence, the trial court need not have complied with these provisions when it ordered that defendant be placed on probation February 6, 1969. That order did not constitute a pronouncement of judgment and sentence. As aptly noted by the State, placing one on probation is not in any way a declaration of a sentence or judgment. Defendant was not sentenced for the crime to which he had plead guilty until October 7, 1970.

Defendant's argument that he was in effect sentenced and judgment was pronounced against him when the court entered its order of February 6, 1969, and resentenced October 7, 1970, for the crime of adultery is without merit.

■ The granting of probation is not the imposition of sentence nor its equivalent. Gehl v. People, 161 Colo. 535, 423 P. 2d 332, 334; In re Williams' Petition, 145 Mont. 45, 399 P.2d 732, 736–739; Commonwealth ex rel. Paige v. Smith, 130 Pa. Super. 536, 198 A. 812, 813–815; Connor v. Commonwealth, 207 Va. 455, 150 S.E.2d 478, 480; State ex rel. Strickland v. Melton, 152 W.Va. 500, 165 S.E.2d 90, 94. Parole arises after the end of the criminal prosecution, including imposition of sentence. Morrissey v. Brewer, 408 U.S. 471, 92 S.Ct. 2593, 2600, 31 L.Ed.2d 484. Although it has been said there is a basic difference between "probation" and "parole" in that probation relates to judicial action taken before the prison door is closed, whereas parole relates to executive or administrative action taken after the door has been closed on a convict, State v. Hewett, 270 N.C. 348, 351, 154 S.E.2d 476, 479, both follow conviction and imposition of sentence, Cole v. Holliday, 171 N.W.2d 603, 609 (Iowa 1969), unless otherwise explicitly authorized by statute.

■ II. The right to defer imposition of a sentence in a criminal case is not inherent but is regulated by statute and can only be exercised in accordance with the terms of the statute. As tending to support this principle see Pagano v. Bechly, 211 Iowa 1294, 1296, 232 N.W. 798, 799 and State v. Boston, 234 Iowa 1047, 1049–1050, 14 N.W.2d 676, 678.

This appears to be the general rule. Pete v. State, 379 P.2d 625 (Alaska 1963) (power to suspend sentences is not inherent in the judicial branch of government, but that power exists only when conferred upon the judiciary by the legislature); Peterson v. Flood, 84 Ariz. 256, 326 P.2d 845 (the power of a court to suspend sentence is not an inherent power but exists solely by virtue of statute and may be exercised only in accordance therewith); State v. Van Meter, 7 Ariz.App. 422, 440 P.2d 58, 64 (in accord with earlier statement); Fayad v. Superior Court, 153 Cal.App.2d 79, 313 P.2d 669 (authority of court to suspend imposition or execution of sentence in a criminal case and to place defendant on probation is wholly statutory, and statute furnishes and limits measure of authority which the court may exercise); State v. Eighth Jud. Dist. Ct. In & For County of Clark, 85 Nev. 485, 457 P.2d 217 (trial courts do not have inherent power to suspend imposition or execution of sentence and can order such suspension only as authorized by statute and such statutory power must be strictly construed); and State ex rel. Woodhouse v. Dore, 69 Wash.2d 64, 416 P.2d 670 (power of court to defer imposition of sentence in criminal case, as with the power to suspend sentence, must come expressly from the legislature).

Federal courts have been expressly authorized to suspend the imposition or execution of sentence and place a defendant on probation by the Probation Act, 18 U.S. C.A. section 3651 which provides in part:

"Suspension of sentence and probation. Upon entering a judgment of conviction of any offense not punishable by death or life imprisonment, any court having jurisdiction to try offenses against the United States when satisfied that the ends of justice and the best interest of the public as well as the defendant will be served thereby, may suspend the imposition or execution of sentence and place the defendant on probation for such period and upon such terms and conditions as the court deems best.

" * * *."

States having probation acts in addition to those listed in Shepard's Acts and Cases by Popular Names as disclosed by our research include, Florida (Statutes Annotated, vol. 24, chapter 948, section 948.01 (3)); Minnesota (Statutes Annotated, chap-

ter 609, section 609.135); Mississippi (Code Annotated, section 4004–23); New Jersey (Statutes Annotated, Title 2A, chapter 168, section 1); Ohio (3 Baldwin's Ohio Revised Code Annotated, Titles 19–29); Utah (8 Utah Code Annotated, 77–35–17), which brings the total to 27.

III. The problem is whether section 247.20 set out, supra, explicitly authorizes the procedure adopted by the court in the case before us.

As indicated in division I, supra, defendant maintains this statute does not authorize a trial court in a criminal proceedings to defer imposition of sentence and place a defendant convicted by plea or verdict of guilty on probation.

The State does not dispute the principle of law that the authority to suspend sentences and grant probation is purely statutory, the court having no inherent power to do so. It contends, however, that such authority was granted in section 247.20 as it first appeared in The Code, 1966. As originally enacted what is now section 247.-20 provided, "The court * * * shall have the power to suspend the execution of the sentence * * *." This section was repealed by the Sixtieth General Assembly, chapter 159, section 1, and the 1966 statute was enacted as a substitute. The word "execution" was dropped by the revised statute. This section appears unchanged in The Code, 1971.

The State points to this portion of the revised statute as pertinent to the problem:

"* * * the trial court * * * may by *record entry at time of or after sentence is pronounced* * * * suspend the sentence and grant probation * * * during good behavior." (Emphasis in State's argument.)

The State concedes in written brief and argument that section 247.20 has been consistently applied to situations involving the power of the court to suspend *execution* of sentences and frankly admits that research discloses no case where this section has been used to uphold the power of the court to suspend *imposition* of sentences. It maintains, however, that the statute as now written is inclusive of both situations.

The underlying contention of the State's argument is that the language "at the time of or after sentence is pronounced" clearly defines two points in time. One point in time is defined as after sentence is pronounced. The other, at time of sentence, can logically refer only to a point before sentence is pronounced, that is, before imposition. It insists that had the legislature wanted to provide only for power to suspend *execution* they would have left that part of the statute as it read in previous codes.

■ We are not persuaded by the State's argument. In our opinion section 247.20 refers only to a suspended sentence and has no application to a deferred sentence. The two are not the same. A suspended sentence is one actually imposed but the execution thereof is thereafter suspended while a deferred sentence is never imposed unless defendant violates the condition of his probation.

In Roberts v. United States, 320 U.S. 264, 268, 64 S.Ct. 113, 116, 88 L.Ed. 41, 43, this statement appears:

"The ten year legislative history of the Probation Act strongly suggests that Congress intended to draw a sharp distinction between the power to suspend execution of a sentence and the alternative power to defer its imposition."

■ In the case under consideration judgment was not pronounced against defendant until October 7, 1970. Before that time there was no sentence to be suspended. Thus, the factual situation presented by the February 6, 1969, procedure involves deferring imposition of sentence and is not authorized by section 247.20.

■ The State's argument that the statute defines two points in time is without

merit. We construe the words "at time of" as meaning "simultaneously with" rather than "prior to." As support for our construction of the quoted words see Stella v. Graham-Paige Motors Corp. (S.D.N.Y.), 104 F.Supp. 957, 960, where the district court was interpreting a provision of the Securities Exchange Act of 1934.

IV. There is thus left for consideration the consequence of the trial court's failure to comply with section 247.20, The Code.

Defendant urges that since the trial court suspended the pronouncement of sentence without statutory authority, it was without jurisdiction to revoke the unauthorized order and impose sentence October 7, 1970. People v. Penn, 302 Ill. 488, 135 N.E. 92; Warner v. State, 194 Ind. 426, 143 N.E. 288; Ex Parte Brown (Mo.App.), 297 S.W. 445; Collins v. State, 24 Okl.Cr. 117, 217 P. 896, cited by defendant in support of his contention, involve the indefinite postponement of sentence. The cited cases do not aid defendant since in the case under consideration imposition of sentence was not deferred indefinitely but to a day certain, March 1, 1970.

The State refers the court to State v. Stevens, 47 Iowa 276, 278 and State v. Ray, 50 Iowa 520, 521, wherein sentence was not immediately pronounced following a verdict or plea of guilty.

In Stevens defendant entered a plea of guilty on the last day of the term and requested that the cause be continued, which request was granted. Because the record did not show any objection to the continuance the court presumed that six hours did not intervene between the filing of the plea and the final adjournment of the term; therefore, under the terms of the statute the trial court did not err in failing to pronounce judgment at the term at which the plea was filed. With regard to the lapse of 17 months before sentence was pronounced, the court observed:

"Whether a term of court was held after that at which the plea of guilty was filed and before the term in which judgment was pronounced does not appear from the record. In the absence of a showing that such term was held we will presume that judgment was entered at the next term after the plea and continuance."

In Ray defendant was convicted during the January term of 1877. However, the court did not render judgment upon the verdict until the August term of the same year. The court stated: " * * * It is insisted that the court could not render judgment after the term, but our attention is called to no statute or decision which supports the position. We discover no error, and the judgment must be affirmed."

We do not consider the cited cases helpful to a solution of the problem.

▇▇▇▇ There can be no doubt that a court has judicial power to defer the pronouncement of judgment for the purpose of hearing and determining motions for a new trial or in arrest of judgment or for such reasonable time as may be necessary to complete an investigation of the accused's record, his family life and other facts bearing upon his likelihood of reformation in order to determine a just and appropriate sentence. Such procedure does not deprive the court of jurisdiction to later impose a valid sentence where a definite time has been fixed for imposition of sentence. Otherwise, it is not within the power of the court to defer the pronouncement of sentence after conviction in the absence of statutory authority.

The order of February 6, 1969, was void insofar as it attempted to place defendant on probation without the imposition of sentence.

However, where pronouncement of sentence has been suspended for a fixed time, as here, the case remains on the court docket until disposed of by final judgment. Jurisdiction of the district court continued over the case and defendant until disposed of by imposition of a valid sentence.

Defendant's contention considered in this division is without merit.

V.  We wish to emphasize that the conclusion the trial court was without judicial power to defer imposition of sentence and place defendant, who had been convicted by a plea of guilty, on probation, is based on absence of statutory authority which can only come from the legislature.  We call the attention of the legislature to the number of jurisdictions, both state and federal, which have enacted statutes granting trial courts such judicial power.

The case is therefore

Affirmed.

All Justices concur except McCORMICK, REYNOLDSON and HARRIS, JJ., who concur specially.

McCORMICK, Justice (concurring specially).

I concur only in the result.

I.  *The scope of the majority opinion.* The only proposition urged by defendant is that trial court exhausted its sentencing jurisdiction by entry of its February 6, 1969, order of probation so that he could not be "resentenced" October 7, 1970.  Strangely, although claiming the probation order entered after his plea of guilty was a sentence precluding later sentence, defendant asks a "new trial" as his remedy.  The power of a court to defer sentence is involved only insofar as defendant challenges trial court's authority to impose probation prior to judgment.  The case could and should be disposed of by simply noting, as the majority does, that an order of probation is not a judgment.  Its validity could not affect validity of judgment later entered.  When that fundamental premise is accepted, discussion of Code § 247.20 and trial court's power to defer sentence is unnecessary to decision of the appeal.  I believe the majority is mistaken in reaching those issues. The appeal is patently without merit and

should not be the occasion for an advisory opinion on questions which do not need to be answered in this case.

II.  *The effect of the majority opinion on deferral of sentence.*  What trial court did in this case needs to be viewed in perspective.  It sought to give defendant the benefit of what has been described as a "deferred sentence."  As will be shown, this dispositional alternative is a carryover from seventeenth century English common law when the only way for a court to relieve from injustice was to refuse to adjudicate guilt.  Sentence in appropriate cases, after plea of guilty, is deferred for a specified period, usually upon condition defendant submit to probation.  If defendant conforms to the terms of probation he is permitted to withdraw his guilty plea at its expiration and ask that the case be dismissed in the interests of justice.  This sentencing option is widely employed by Iowa trial judges.  See 57 Iowa L.Rev. 598, 612.  Analogous procedure is used in Iowa juvenile courts to permit a child to receive court services without the stigma of delinquency adjudication.

This procedure accomplishes two salutary purposes.  It serves as a means of discharging a first offender without a felony record where there are extenuating circumstances, and it is a vehicle for obtaining proper probation supervision without first imposing a penitentiary sentence.

In this case, the State and defendant, at all material times represented by able counsel, reached a plea bargain.  Upon defendant's plea of guilty the State agreed to concur in defendant's request as to sentence.  From the scant record made, it appears this request must have been for deferred sentence and probation.  All we have is this record on the subject when the plea of guilty was entered February 9, 1969:

"Mr. TeKippe [Assistant County Attorney]:  Your Honor, this matter is coming before the court regarding a change of plea I believe.

"The court: It's a negotiated plea?

"Mr. TeKippe: Yes, Your Honor, the State of Iowa, Dubuque, County has conferred with the defendant's attorney about the possible plea and concur probably in the recommendation.

"The court: Very well, is that correct, Mr. Klauer?

"Mr. Klauer [defendant's attorney]: Yes, Your Honor, and at this time we will change our plea and plead guilty.

"The court: Is this a negotiated plea?

"Mr. Klauer: Yes, Your Honor.

"The court: And have you discussed this plea with the defendant William A. Wright?

"Mr. Klauer: Yes, sir.

"The court: And is he familiar with the negotiations you were going through?

"Mr. Klauer: Yes, Your Honor, *and he understands the probation and so forth.* (Emphasis supplied.)

The record shows defendant acknowledged his comprehension of the plea bargain and that he entered a voluntary plea of guilty. Although not bound to do so, trial court obviously acquiesced in the agreement for deferred sentence. No complaint was ever voiced by defendant until *after* his October 7, 1970, sentence upon failure to comply with the terms of the February 6, 1969, sentence deferral order.

Trial courts and the bar should probably give more heed to the result in this case than how it was reached. The majority discusses the court's authority to *impose* probation under Code § 247.20 and finds none. However, the right to impose probation without a defendant's consent is not essential to use of this sentencing option, nor was it essential in this case.

A more crucial question is raised by the majority's treatment of a trial court's authority to postpone sentences. Here again what the court has *done* seems to me

clearer and more significant that what is *said*. Trial court's order of February 6, 1969, obviously was intended to defer sentence as one step in pursuing the deferred sentence procedure. Usually trial courts select shorter periods, ranging from six months to one year. This apparently is based upon the theory that a fit subject for this dispositional alternative will be able to demonstrate whether he should receive the law's penalty in a relatively short time. In the present case trial court's order fixed sentencing for 13 months after plea of guilty. Nevertheless, the majority has found it did *not* thereby lose its jurisdiction to sentence defendant then or on October 7, 1970, when sentence was actually pronounced.

Even though language in the majority opinion purports to limit a trial court's power to defer sentencing even to a definite date, that limitation was not effective to void what was done here. It also seems significant that the majority did not find it necessary to consider the question of waiver in order to reach its result.

Therefore, I do not think the majority opinion in this case necessarily forestalls future use of this sentencing alternative.

III. *Statutory authority to defer imposition of sentence.* The majority's position is contradictory in Divisions II and IV. In Division II it concludes Iowa trial courts have no inherent power to defer imposition of sentence, authority to do so must be statutory, and, unfortunately, Iowa has no appropriate statute. In Division IV, however, it concludes Iowa trial courts *do* have power to defer imposition of sentence "for the purpose of hearing and determining motions for new trial or in arrest of judgment or for such reasonable time as may be necessary to complete an investigation of the accused's record, his family life and other facts bearing upon his likelihood of reformation in order to determine a just and appropriate sentence." No statutory authority is cited, but the majority has "no doubt" the power exists. Thus, in

the same opinion the majority announces and then violates its precept that Iowa trial courts have no inherent power to defer imposition of sentence.

Actually, there is statutory authority in § 789.2, The Code, by which the legislature expressed its policy concerning time of sentence. It prescribes a minimum but no maximum time. Trial courts are by its terms *mandated* to defer imposition of sentence for the minimum period and implicitly permitted in the proper exercise of judicial prerogative to determine when sentencing should be later fixed. Cf. People v. Harrison, 5 Cal.App.3d 602, 612, 85 Cal. Rptr. 302, 308 (1970) ("A delayed judgment will not be reversed when no miscarriage of justice occurs.")

The majority has judicially amended the statute. In doing so it leaves many unanswered questions. For example, does it mean that a trial court loses *jurisdiction* to sentence by mere passage of time? If so, what about situations where sentence is deferred because the accused has absconded? Or because he is incarcerated for a time somewhere else? Or because he is ill? Or where he requests or acquiesces in the delay? Or when the prosecution requests delay? Or where, as here, most of the delay is the result of a plea bargain? Above all, what is "reasonable delay"?

It is significant that sentencing power did not expire in this case although exercised *twenty months* after defendant's guilty plea and despite an order originally postponing its exercise for 13 months. We found no loss of jurisdiction in State v. Stevens, 47 Iowa 276 (1877) (17 month delay in sentence) and State v. Ray, 50 Iowa 520 (1879) (seven month delay in sentence). The majority says these cases are not "helpful." Yet, the delays involved were not for purposes now approved and, nevertheless, power to sentence was not lost. Cf. McPherson v. State, 187 Ark. 872, 63 S.W.2d 282 (1935) (six year delay in sentence); 24 B C.J.S. Criminal Law § 1928 at 260–261 ("In the absence of prejudice, neither undue haste nor undue delay in pronouncing judgment or imposing sentence, * * * constitutes reversible error.")

Statutory authority for deferring sentence is granted by § 789.2, The Code. There is also statutory authority for the additional steps in using the deferred sentence option as previously described. The majority does not discuss them, but they are part of the employment of this dispositional alternative. Authority for withdrawal of the plea of guilty with court permission is in § 777.15, The Code: "At any time before judgment, the court may permit the plea of guilty to be withdrawn * * *." Finally, the legislature in § 795.5 cloaked trial courts with power to dismiss a criminal case at any stage: "The court, upon its own motion or the application of the county attorney, in the furtherance of justice, may order the dismissal of *any pending criminal prosecution * * *.*" (Emphasis supplied.) It is anomalous to suggest trial courts have statutory power to end a prosecution at any stage but none to fix the time at which each stage will be reached.

Iowa trial courts have clear statutory authority for deferring imposition of sentence and for following through with the other steps involved in pursuing this sentencing alternative.

IV. *Inherent power to defer imposition of sentence.* Even if there were no statutory authority for deferring imposition of sentence in Iowa, there would be inherent power to do so. The principle is explained in People ex rel. Forsyth v. Court of Sessions, 141 N.Y. 288, 292, 36 N.E. 386, 387 (1894):

"There can, I think, be no doubt that the power to suspend sentence after conviction was inherent to all such courts at common law. The practice had its origin in the hardships resulting from peculiar rules of criminal procedure, when the court had no power to grant a new trial, either upon the same or additional evidence, and the verdict was not

reviewable upon the facts by any higher court. The power, as thus exercised, is described in this language by Lord Hale: 'Sometimes the judge reprieves before judgment, as where he is not satisfied with the verdict, or the evidence is uncertain, or the indictment is insufficient, or doubtful whether within clergy; *also when favorable or extenuating circumstances appear, and when youths are convicted of their first offense.* And these arbitrary reprieves may be granted or taken off by the justices of gaol delivery, although their sessions be adjourned or finished; and this, by reason of common usage.' 2 Hale, P. C. c. 58, p. 412. This power belonged, of common right, to every tribunal invested with authority to award execution in a criminal case. 1 Chit.Cr.Law, (1st Ed.) 617, 758. Without attempting to collate all the authorities on the subject, it is sufficient to say that the power to suspend sentence at common law is asserted by writers of acknowledged authority on criminal jurisprudence, by the uniform practice of the courts, and numerous adjudged cases. (Citations) (Emphasis supplied.)

Sir Matthew Hale, whose statement is quoted, was Lord Chief Justice of the King's Bench from 1671 until his death five years later. Many jurisdictions have recognized this inherent power. See People v. Patrick, 118 Cal. 332, 50 P. 425 (1897); Ex parte Williams, 26 Fla. 310, 8 So. 425 (1890); State v. McCoy, 94 Idaho 236, 486 P.2d 247 (1971); Huggins v. Caldwell, 223 Ky. 468, 3 S.W.2d 1101 (1928); People v. Mueller, 15 Chicago Leg. News, 364 (Illinois 1883); Ex parte St. Hilaire, 101 Me. 522, 64 A. 882 (1906); Commonwealth v. Dowdican, 115 Mass. 133 (1874); People v. Reilly, 53 Mich. 260, 18 N.W. 849 (1884); Sylvester v. State, 65 N.H. 193, 20 A. 954 (1889); State v. Addy, 43 N.J.L. 113 (1881); State v. Simmington, 235 N.C. 612, 70 S.E.2d 842 (1952); Weber v. State, 58 Ohio St. 616, 51 N.E. 116 (1898); Com. v. Dunleavy, 16 Pa.Super. 380 (1901); see also 21 Am.Jur.2d Criminal Law §§ 552–557.

Some jurisdictions have refused to recognize it. Many of their decisions are distinguishable as dealing with indefinite suspension of sentence or with the distinct issue of suspension of *execution* rather than *imposition* of sentence. We recognized the distinction and the inherent power to defer imposition of judgment in State v. Voss, 80 Iowa 467, 469, 45 N.W. 898 (1890) ("The court, in a proper case, may arrest judgment to attain the ends of justice * * *.")

Extensive analytical discussion of the inherent power of courts to defer imposition of sentence and ultimately discharge a defendant is found in a number of cases in addition to *Forsyth*. See Ex parte United States, 242 U.S. 27, 37 S.Ct. 72, 61 L.Ed. 129 (1916) (finding no inherent power in federal district courts to suspend execution of sentence); State v. Bateh, 110 So.2d 7 (Fla.1958), *cert. den.* 361 U.S. 826, 80 S.Ct. 74, 4 L.Ed.2d 69 (1959); Gazda v. State, 244 So.2d 454 (Fla.App.1970); Marks v. Wentworth, 199 Mass. 44, 85 N.E. 81 (1908); Gehrmann v. Osborne, 79 N.J. Eq. 430, 82 A. 424 (1911). Few recent cases discuss the concept because it has long been codified in all of the states where previously recognized at common law. The practice is also authorized by statute in all of the states represented by the majority's citations.

Public policy as reflected in our statutes, especially Code § 795.5, clearly supports continued recognition and application in Iowa of the inherent power of trial courts to use this sentencing technique. As shown, the principle is deeply rooted in our common law heritage. There is no persuasive reason to deviate from it.

V. *The need for legislation.* The majority does not discuss the inherent power concept but endorses legislation to authorize the sentencing option involving use of deferred sentence and probation. There are now 47 states other than Iowa which expressly authorize substantially this procedure. Their statutes are as follows:

Alaska—Alaska Stat. § 12.55.080 (1962);

Arizona—Ariz.Rev.Stat. § 13–1657 (1956), as amended (Supp.1971);

Arkansas—Ark.Stat.Ann. § 43–2324 (1947);

California—Cal.Penal Code § 1203 (West Supp.1972);

Colorado—Colo.Rev.Stat. § 39–16–6 (1963);

Connecticut—Conn.Gen.Stat. § 53a–28 (Supp.1969);

Delaware—Del.Code Ann. tit. 11 § 4332 (Supp.1968);

Florida—Fla.Stat.Ann. § 948.01(3) (1944), as amended (Supp.1972);

Georgia—Ch. 1190, Statewide Probation Act, Ga.Laws, 1972 Session, at 609–612;

Hawaii—Hawaii Rev.Stat. § 711–77 (1959);

Idaho—Idaho Code § 19–2601 (1947), as amended (Supp.1971);

Illinois—Ill.Rev.Stat. Ch. 38, §§ 117–1 et seq. (1964), as amended (Supp.1972);

Indiana—Ind.Stat.Ann. § 9–2209 (Burns 1956), as amended (Supp.1972), IC 1971, § 35–7–1–1.

Kansas—Kan.Stat.Ann. § 21–4603 (Supp. 1970);

Kentucky—Ky.Rev.Stat. § 439.260 (1962);

Louisiana—L.S.A.Rev.Stat. Code of Crim. Proc. Art. 893 (West 1967), as amended (Supp.1972);

Maine—Maine Rev.Stat.Ann. tit. 34, § 1631 (1964), as amended (Supp.1972);

Maryland—Md.Ann.Code Art. 27, § 641 (1957), as amended (Supp.1972);

Massachusetts—Mass.Ann.Laws, Ch. 276, § 87 (1968), as amended (Supp.1971);

Michigan—Mich.Comp.Laws Ann. § 771.-1 (1968);

Minnesota—Minn.Stat.Ann. Ch. 609, § 609.135 (1964), as amended (Supp.1971);

Mississippi—Miss.Code Ann. § 4004–23 (1942), as amended (Supp.1972);

Missouri—Mo.Rev.Stat. § 549.071 (Supp. 1971);

Montana—Mont.Rev.Code § 95–2206 (1947);

Nebraska—Neb.Rev.Stat. §§ 29–2261–2264 (Supp.1971);

Nevada—Nev.Rev.Stat. § 176.225 (1967);

New Hampshire—N.H.Rev.Stat.Ann. § 504.1 (1968);

New Jersey—N.J.S.A. tit. 2A, § 168–1 (1971);

New Mexico—N.M.Stat.Ann. §§ 40A–29–15 to 40A–29–23 (1953);

New York—N.Y.Penal Law § 60.10 (McKinney's Consol.Laws, C. 40, 1967), as amended (Supp.1972);

North Carolina—N.C.Gen.Stat. § 15–197 (1965);

North Dakota—N.D.C.C.A. § 12–53–13 (1960), as amended (Supp.1971);

Ohio—Ohio Rev.Code Ann. § 2951.02 (Baldwin 1971);

Oklahoma—Okl.Stat.Ann. tit. 22, § 991c (1958), as amended (Supp.1972);

Oregon—Or.Rev.Stat. § 137.010 (1971);

Pennsylvania—Penn.Crim.Proc. tit. 19, § 1051 (Purdon 1964);

Rhode Island—R.I.Gen.Laws § 12–19–19 (1969);

South Carolina—S.C.Code § 55–591 (1962);

South Dakota—S.D.Comp.Laws § 23–57–4 (1967), as amended (Supp.1972);

Texas—Tex.Const.Ann. Art. 4 § 11A (Vernon 1955) and Tex.Stat.Ann. Code of Crim.Proc. Art. 42.12 (Vernon 1966), as amended (Supp.1971);

**84**

Utah—Utah Code Ann. § 77–35–17 (1953);

Vermont—Vt.Stat.Ann. tit. 13 § 7042 (1958), as amended (Supp.1972);

Virginia—Va.Code § 53–272 (1950);

Washington—Wash.Rev.Code Ann. §§ 9.-95.200, 9.95.210 (1961), as amended (Supp.1971);

West Virginia—W.Va.Code § 62–12–3 (1966), as amended (Supp.1972);

Wisconsin—Wis.Stat.Ann. § 57.04(1) (West Supp.1972);

Wyoming—Wyoming Stat. §§ 7–315, 7–318 (1959), as amended (Supp.1971).

Although a few of them do not provide a mechanism for vacating conviction and different approaches are used, these statutes illustrate the almost universal legislative acceptance of deferred sentence procedure as a dispositional alternative. Only Alabama and Tennessee have not authorized it. Many of the statutes have been on the books since the early part of the century, indicating this is far from a new phenomenon. Further, the language frequently used is virtually a codification of the common law principle espoused by Lord Hale 300 years ago. See, for example, the Michigan statute, substantially the same since first passed in 1927, which may be utilized " * * * where it appears to the satisfaction of the court that the defendant is not likely again to engage in an offensive or criminal course of conduct and that the public good does not require that the defendant shall suffer the penalty imposed by law * * *."

As previously demonstrated, I do not think additional legislation is essential to authorize deferred sentence dispositions, but certainly it would be desirable in order to refine, standardize, and expand the practice now followed. The legislature has already incorporated the concept into § 409 of 64 G.A., ch. 148, involving first offenders convicted of possession of a controlled substance.

It has our own experience and that of 47 other states to guide it to appropriate legislation spelling out in detail how and in what situations trial courts should utilize it. Authority to impose probation before sentence can also be specifically given.

Iowa now has an adequate system to implement a beneficent ideal. Statutory revision could bring a better system.

REYNOLDSON and HARRIS, JJ., join in this special concurrence.