110 So.2d 7 (1959)
STATE of Florida, Petitioner,
v.
Mussa C. BATEH, Respondent.
Mussa C. BATEH, Petitioner,
v.
STATE of Florida, Respondent.
STATE of Florida, Appellant,
v.
Mussa C. BATEH, Appellee.
Supreme Court of Florida.
February 25, 1959.
Rehearing Denied April 9, 1959.
*8 Richard W. Ervin, Atty. Gen., and David U. Tumin, Asst. Atty. Gen., for petitioner-appellant.
Larkin & Lewis, Jacksonville, for respondent-appellee.
THOMAS, Justice.
Upon the filing of the petition of the State for a writ of certiorari to review a decision of the District Court of Appeal, First District, in Bateh v. State, Fla., 101 So.2d 869, the court proceeded to hear argument on this and two allied matters. We now undertake to answer the pivotal question common to all three cases.
A more complete statement of the facts relevant to this controversy may be found in the opinion of the district court of appeal, however, for the convenience of the reader, we relate the salient ones here.
Two informations were filed in the Criminal Court of Record of Duval County 30 August 1955. Each charged respondent, Mussa C. Bateh, in separate counts, with two violations of the narcotics law. Chapter 398, Florida Statutes 1955, and F.S.A. On 3 November 1955 the defendant entered a plea of nolo contendere to each information. The judge thereupon found the defendant guilty of the infractions but inflicted no punishment upon him. Instead, he announced that sentencing would be deferred from day to day and term to term, and jurisdiction would be reserved for that purpose until such later date, as he might deem it advisable to exercise it.
About a year later, the judge, evidently because he was apprised of three charges that had subsequently been placed against Bateh for violations of the same law, held an inquiry about respondent's conduct while he was at large on his recognizance. It should be noted here that the judge at the beginning of the hearing expressly stated that he had not placed the defendant on probation.
Following the inquiry, the judge vacated the order holding in abeyance the imposition of sentence and sentenced Bateh to serve two years in the state penitentiary for perpetration of the offenses charged in the first information. Later, on 9 April 1957, the judge sentenced Bateh to a like term for the offenses charged in the second information, and ordered that the terms be served consecutively.
Upon the imposition of each sentence an appeal was taken.
For logical reasons well stated, the court held that the open, unqualified, order of the trial judge deferring the imposition of sentence until such time as he considered it advisable to exercise jurisdiction was void, and that the penalties eventually fixed became effective nunc pro tunc the day respondent was adjudged guilty. And, according to the opinion on rehearing, the length of service was to be computed from that day without credit, however, for the period during which the supersedeas bonds were in effect.
It is the gist of the opinion of the district court of appeal that the practice of deferring the imposition of sentences had developed through years of usage, probably as a means to trial judges of meeting situations in which immediate passage of sentence might result in hardship or even injustice and that recognition and sanction of the procedure to which the trial judges resorted for one lawful purpose or another had occurred so often that the practice, by force of pyramided judicial opinions, had come to be regarded as the exercise of a right inherent in the courts. The so-called inherent right, said the district court of appeal, was a concept having no firm *9 foundation. During much or most of the time the practice was developing no method for placing convicted persons on probation had been established and, as the district court indicated in its opinion, doubtless it derived from an effort to meet a need that was supplied by the enactment of Chapter 948, supra, in 1941.
Under the ruling of the district court of appeal a trial judge is, upon adjudicating the guilt of one convicted of crime, restricted to two courses, that is, he can either sentence the convict or place him on probation. The state contends that this decision is in direct conflict with decisions of this court on the same point of law, i.e., the power of a trial court to withhold the passing of sentence without placing the guilty defendant on probation. We think the state's position is sound and that, therefore, this court, by virtue of Sec. 4(2), Article V of the Constitution as amended in 1956, F.S.A., is vested with jurisdiction to entertain, and is obligated to discuss and decide that phase of this controversy. But because of a curious sequence of events affecting this very litigation, the conclusion that a conflict arose between the decision of the district court of appeal and decisions of this court on the same point of law does not, ipso facto, result in an order interfering with that court's decision.
In a series of cases decided by the Supreme Court and cited here by the state there is consistency in the announcements that a trial judge could defer the passing of sentence from time to time and term to term and impose the sentence at any time. Illustrative of these cases are the following citations taken from the petition of the Attorney General: Carnagio v. State, 106 Fla. 209, 143 So. 162; Campbell v. State, 131 Fla. 135, 179 So. 137; Bronson v. State, 148 Fla. 188, 3 So.2d 873; Pinkney v. State, 160 Fla. 884, 37 So.2d 157; and Collingsworth v. Mayo, Fla., 77 So.2d 843. The last two of these were decided after Chapter 948, supra, the probation act, became a law, 1 July 1941; the others before that time.
In Pinkney v. State, decided in 1948, and Collingsworth v. Mayo, decided in 1955, the court clung to the view that the right to delay indefinitely and unqualifiedly the passing of sentences inhered in the trial courts. In the latter, and later, decision the court repeated the language used in Pinkney v. State, supra, that it had "`always been the law of this jurisdiction that, except in cases involving suspension of the imposition of sentence [conditionally] or * * * cases involving probation under the statutes, a trial judge who has deferred the imposition of sentence * * * may proceed to impose sentence * * * at any time * * *.'" [77 So.2d 844] (Italics supplied.) Among the decisions as authority for this pronouncement were Carnagio v. State and Campbell v. State, both supra.
The importance of the italicized language and the citation of cases decided before the year 1941 is that the court in this decision of 1955 bridged the probation law and declared, in effect, that even afterward the trial court had inherent power to suspend the imposition of a sentence and pronounce it later regardless of probation as it had said, in the `pre-probation act' cases cited as authority, the trial court could do.
Such was the state of the law when the opinion in Bateh v. State, supra, was rendered so, to repeat for emphasis, an obvious conflict was created. But, strangely enough, as already intimated, this court in Helton v. State, Fla., 106 So.2d 79, adopted, in the main, the reasoning on this subject enunciated in the opinion in Bateh v. State, supra, and expressly modified the opinion in Collingsworth v. State, supra, and cases cited in it.
It is plain, then, from the language in Helton v. State, supra, that the power of trial judges to hold in abeyance the passage of sentences and to impose them any time in the future, regardless of probation, is disapproved. For procedural reasons such as the determination of "motions and other matters arising between verdict and judgment, [or for the purpose of] gaining information *10 necessary to the imposition of a just sentence; or during the pendency of other charges, or for other good and valid reasons," to quote from Bateh v. State, supra, the language copied in Helton v. State, supra, there may be justifiable delay, and when convicts are put on probation the sentences, of course, may be deferred conditioned on obedience to the terms of probation. But it was plainly the view of the district court, and it is now the view of this court, that one convicted of an offense is entitled to know just when in his life, he meanwhile being at liberty, he is no longer subject to the power of the court to translate his liberty to imprisonment. It will be recalled that in the Helton case the convict was brought into court and sentenced after being at large for 12 years.
Following the strange, or odd, turn in the course of this litigation we have come to the conclusion that this court, although it gained jurisdiction because of a conflict between the decision of the district court of appeal in Bateh v. State, supra, and prior decisions of this court on the same point of law, cannot disturb the judgment of that court because it has, meanwhile, resolved the conflict by adopting, on the principal point involved, the decision of the district court.
The upshot of this discussion is that when a person is adjudged guilty of an offense the trial judge should, in the absence of the circumstances outlined, either sentence him or place him on probation. This procedure would obviate for all time the possibility that a convict wandering around because he had not been actually sentenced could be summoned into court at any time, regardless of the march of the years, and sentenced for a term which would long since have expired had it been imposed in the beginning. No charge has been made in these cases, nor is there any suspicion, that the trial judges were actuated by any but the highest motives, or doing anything that had not been sanctioned by decisions of this court, but if the ruling is followed the administration of criminal justice will, we think, be more orderly, more sure and more humane.
Such situations arising after the day Sec. 775.14, Florida Statutes 1957, F.S.A., became effective will be governed by that act. Although the ruling by the district court of appeal in this case and the ruling of this court in the Helton case were based on dissimilar factual situations, the effect of them gives an opportunity for argument that they are in conflict.
In the Helton case this court simply held that when the maximum time for which a sentence could have been fixed had expired the court had lost the power to pass any sentence at all. In the present case the district court of appeal held that when the trial court belatedly exercised its power to sentence it could do so only by making the sentence effective for a period beginning at the time of adjudication of guilt, with exceptions it is not necessary to repeat.
It is our view that the inconsistency between the decisions in this regard is more apparent than real and that they may be logically harmonized. When a trial court has delayed the sentence the power to sentence must be exercised before the lapse of the extreme period for which sentence could have been imposed, and when it is inflicted the term cannot be projected beyond the extreme period.
So, on the prima facie showing that a conflict was created the writ of certiorari should issue, but it having been decided upon study that no such conflict in reality arose, the writ is discharged.
This decision disposes also of the appeal of the state and the petition of the respondent for certiorari all of which were consolidated for presentation by brief and oral argument.
TERRELL, C.J., and DREW, THORNAL and O'CONNELL, JJ., concur.