811 So.2d 683 (2002)
Carlos SAINZ, Appellant,
v.
The STATE of Florida, Appellee.
No. 3D00-1979.
District Court of Appeal of Florida, Third District.
March 13, 2002.
*685 G. Richard Strafer, Miami, for appellant.
Robert A. Butterworth, Attorney General, and Jill K. Traina, Assistant Attorney General, for appellee.
Before COPE, GREEN and RAMIREZ, JJ.

On Rehearing Granted
COPE, J.
On consideration of the State's motion for rehearing, we withdraw the opinion dated November 28, 2001 and substitute the following opinion:
Carlos Sainz appeals his sentences, as well as the denial of his motion to withdraw his plea. We conclude that the State's cross-appeal is well taken, and that defendant-appellant Sainz must serve the term agreed to in the plea bargain.

I.
In 1987, three Colombian citizens were murdered in defendant's apartment in New Jersey. The Colombians were there in connection with a drug transaction.
After the murders, defendant fled to Florida. New Jersey soon arrested two other participants in the crimes (Andres Garcia and Jose Cabrera), and issued an arrest warrant for defendant.
In April 1988, City of Miami police officer James Hayden stopped defendant's car for a minor traffic infraction. Defendant got out of the car and shot the officer twice, wounding him seriously. Defendant was apprehended three days later in Miami. Defendant was charged with attempted first degree murder with a firearm, unlawful possession of a firearm while engaged in a criminal offense, and possession of a firearm by a convicted felon.
The New Jersey authorities were notified that the defendant had been taken into custody. New Jersey personnel came to Florida and offered the defendant a plea bargain on the three New Jersey homicide charges. In exchange for his testimony against his New Jersey codefendants, defendant would receive a life sentence (parole eligible) with a thirty-year mandatory minimum sentence. Defendant had admitted to his Florida public defender that he personally had killed two of the Colombians.
Given that there were three homicides, the defendant's exposure in New Jersey was to a life sentence with three consecutive thirty-year mandatory minimum sentences, for a total mandatory minimum of ninety years. Defendant also had a theoretical exposure to the death penalty, although the death penalty had not been sought at the time of the plea. Defendant decided to accept the New Jersey offer.
With regard to the Florida charges, defendant agreed in substance to serve a mandatory thirty years concurrent with the anticipated New Jersey sentence. This was not to be shortened in the event that there was any subsequent action to reduce the New Jersey sentence.
*686 The New Jersey authorities were anxious to have the defendant transported immediately to New Jersey to assist in the prosecution of the two codefendants. There was a concern that if the Florida court imposed sentence on the defendant, this would result in his being transported to the Department of Corrections and could create a delay of several weeks before he could be transferred from the Florida Department of Corrections to the State of New Jersey. To avoid this problem, it was understood that the trial court would accept the guilty plea, but postpone sentencing. This would allow the defendant to go to New Jersey to testify, and then be returned to Florida for sentencing.
On May 6, 1988, the trial court accepted the plea in a thorough plea colloquy. The court entered judgment and the defendant was fingerprinted. The court scheduled September 8, 1988 for sentencing.
Defendant was transferred to New Jersey. The New Jersey authorities placed him in the same jail as codefendant Andres Garcia, against whom defendant was to testify. Garcia communicated threats to the defendant through an air duct. Defendant repudiated the plea agreement and refused to testify. New Jersey then prepared to prosecute defendant for the homicides as well as related drug and firearm charges.
New Jersey refused to return defendant to Florida for pronouncement of the Florida sentence. In 1989 the Florida court issued an alias capias which operated as a hold in New Jersey.
The New Jersey case against the defendant went to trial in 1994, at which time the defendant was convicted of drug and firearm charges but acquitted of the homicide charges. He was sentenced to twenty years imprisonment (parole eligible), with a ten-year mandatory minimum term.[1]
In October 1995, defendant filed a motion in the Florida court to preclude his being sentenced in Florida. He contended that section 775.14, Florida Statutes, creates a five-year statute of limitations on sentencing. Defendant argued that since he had not been sentenced within the five-year period, he could not now be sentenced pursuant to his plea bargain and was entitled to be discharged from his Florida sentence. He argued alternatively that he should be allowed to withdraw from his plea or that his Florida sentence should be made coterminous with his New Jersey sentence. There were various hearings on these motions, but they were not resolved.
In 1999, New Jersey paroled the defendant and he was transferred to Florida. In 2000, a successor Florida judge conducted an evidentiary hearing on defendant's requests for relief.
The trial court rejected the defendant's claim that his sentencing was time-barred under section 775.14, and also rejected the defendant's claim of ineffective assistance of trial counsel. However, the court ruled that the Florida sentence would be coterminous with the New Jersey sentence, which is presently scheduled to expire in May 2003.
The defendant has appealed, contending that he is entitled to be relieved entirely of his obligations under the Florida plea bargain. The State has cross-appealed, arguing that the agreement for a thirty-year sentence for attempted murder of the police officer should be enforced.

II.
The defendant argues that he should be released because the sentence he agreed to was not formally pronounced until over five years after the plea bargain was accepted by the court. The defendant relies *687 on section 775.14, Florida Statutes, for this proposition. The trial court rejected this argument, and so do we.

A.
Section 775.14 provides:
775.14 Limitation on withheld sentences. Any person receiving a with-held sentence upon conviction for a criminal offense, and such withheld sentence has not been altered for a period of 5 years, shall not thereafter be sentenced for the conviction of the same crime for which sentence was originally withheld.
(Emphasis added).
By its plain words, this statute says that if a defendant receives a withheld sentence (this defendant did not), and that withheld sentence has not been altered, then the defendant shall not thereafter be sentenced for the same crime for which sentence was originally withheld.
It is important to understand the reason for the existence of this statute. Prior to the enactment of the Florida probation statute in 1941, the trial court would place a defendant on probation by simply withholding sentence. Typically the trial court would order that "`... the passing of sentence herein be deferred from day to day and term to term until finally disposed of and the Court herein expressly reserves jurisdiction of this cause to impose sentence herein at a later date as the Court may deem advisable.'" Bateh v. State, 101 So.2d 869, 870 (Fla. 1st DCA 1958), cert. discharged with opinion, 110 So.2d 7 (Fla.1959); see also Helton v. State, 106 So.2d 79 (Fla.1958); Vernon W. Clark, Probation in the Criminal Courts of Florida, 14 Fla. L.Rev. 213, 218-25 (1961).
Under this procedure, the withheld sentence was, in fact, the sentence. An order withholding sentence was an order for unsupervised probation. Vernon W. Clark, supra, 14 Fla. L.Rev. at 218. If the defendant committed another crime, the court could revoke the order withholding sentence, and impose any lawful sentence. Helton, 106 So.2d at 80. This system of withholding sentence persisted well into 1950's. See id.
The system of withholding sentence was subject to abuse, because sentencing could be withheld indefinitely. In Helton, for example, the trial court had withheld sentencing for twelve years, even though the offense only carried a five-year legal maximum. Id. at 80-81.
In this setting, the 1957 legislature enacted section 775.14. The statute provided, as already stated, that if a person received a withheld sentence and the withheld sentence was not altered for five years, the defendant could not thereafter be sentenced for the conviction of the crime on which the sentence was withheld. The statutory purpose was to impose a five-year maximum on probation imposed by the withholding of sentence.[2]

B.
In State v. Gazda, 257 So.2d 242 (Fla. 1971), the Florida Supreme Court applied the statute to sentencing where the defendant pled guilty and left the sentencing decision to the court. The trial court accepted the plea but directed that "`adjudication and sentence be withheld and a *688 presentence investigation be ordered.'" Id. at 243. The defendant was transported to the state tuberculosis hospital for examination and care, with instructions to return him to the court when cured. Instead the defendant absconded and was not found for a period of more than five years.
The Gazda court concluded that section 775.14 was applicable, apparently because the trial court had entered an order stating that the court was withholding sentence. However, the court decided that the defendant was not entitled to any relief under the statute because the defendant had fled from Florida. The court ruled that the statute was tolled during defendant's absence from the state.
The important point about Gazda is that it overturned the district court of appeal's ruling that section 775.14 is absolute and allows no exceptions. The Florida Supreme Court reasoned that the defendant could not be allowed to profit from his own wrong, and on the facts there presented, the defendant would not be allowed to invoke section 775.14.

III.
The basic question in the present case is whether section 775.14 applies to a plea bargain in which there is an agreed sentence. The answer is no. An agreed sentence is not a "withheld sentence" under section 775.14.
The idea underlying section 775.14 is that a defendant should not be left forever in uncertainty about whether, and for how long, he will be incarcerated. State v. Bateh, 110 So.2d 7, 10 (Fla.1959) ("But ... one convicted of an offense is entitled to know just when in his life, he meanwhile being at liberty, he is no longer subject to the power of the court to translate his liberty to imprisonment.").
Thus, section 775.14 is aimed at the situation in which the trial court has withheld sentence, and has not actually made a decision regarding what the defendant's sentence will be. In the present case, there is no sentencing decision to be made, because the sentence has already been agreed upon. There does not appear to be any reported decision which has applied section 775.14 to a plea bargain in which there was an agreed sentence.
In this case, the formal pronouncement of sentence is a mere ministerial act. The fact that there is an agreement for a thirty-year sentence takes this case out of section 775.14.[3]

IV.
Apart from the foregoing, defendant is equitably estopped from invoking the benefits of section 775.14. Major League Baseball v. Morsani, 790 So.2d 1071 (Fla.2001); Oliver v. State, 379 So.2d 143 (Fla. 3d DCA 1980). The defendant cannot accept the benefits of a favorable plea bargain and then disclaim his obligations thereunder. Mann v. State, 622 So.2d 595 (Fla. 3d DCA 1993). Alternatively, the statute was tolled under the Gazda decision.

A.
At the time of defendant's arrest for shooting the police officer in 1988, the evidence against him was overwhelming. This included the defendant's own confession. The evidence is summarized in the written plea agreement.
*689 The offense of attempted first degree murder with a firearm is a life felony. McGee v. State, 791 So.2d 1252 (Fla. 3d DCA 2001).[4] Defendant in his plea agreement acknowledged that under Florida law, the court would be allowed to impose a departure sentence. That was so because the Florida Supreme Court had held that the shooting of a uniformed police officer is a valid reason for a sentence departure. State v. Baker, 483 So.2d 423, 424 (Fla.1986).[5]
Given the fact that the defendant seriously wounded a police officer during a routine traffic stop, had a prior felony record from New Jersey, and was a fugitive at the time of the offense, a life sentence for the Florida crime was not only possible, but probable. Further, if the defendant proceeded to trial in Florida, the sentences on any subsequent conviction in New Jersey would likely run consecutive to the Florida sentence.
In the plea bargain, the defendant received very clear benefits. He received a thirty-year term, thus assuring release from Florida incarceration in the future. The Florida time would be concurrent with any New Jersey sentence, rather than consecutive. Further, at the time he entered into the plea bargain, it was believed that he would be receiving a life sentence in New Jersey with a thirty-year mandatory minimum. Thus, if the New Jersey plea agreement had been carried out as intended, defendant would not have been serving any additional time for the Florida offense.
Simultaneous with the Florida agreement, defendant entered into his tentative New Jersey plea agreement. In order to obtain favorable treatment in New Jersey, defendant was obligated to cooperate with the New Jersey authorities.
New Jersey wanted the defendant to be transported to that state immediately. Florida was willing to cooperate with New Jersey in its prosecution of crimes which occurred within its borders. In so doing, Florida was also accommodating the defendant's desire to carry out his cooperation obligations under the New Jersey plea agreement.
At the plea colloquy, the following occurred:
THE COURT: All right.
I do note also the Defendant is going to the State of New Jersey. This would be prior to sentencing. So I will be accepting the plea today and the adjudication of guilt with the understanding that he will be going to the State of New Jersey.
I want to verify, however, he did waive his rights of extradition and will be going to New Jersey for that?
MR. MCDONALD: He waived extradition and he did execute a Waiver of Extradition.
I am prepared to state for the record here today that he is, again, willing to waive extradition.
Is that correct, Mr. Sainz?
THE DEFENDANT: (Shaking head affirmatively.)
THE COURT: All right.
(R. 43-44). The court went on to set September 8, 1988, as the sentencing date.
In furtherance of his plea agreement with New Jersey, the defendant waived *690 extradition. He made no objection whatsoever to the deferral of sentencing until a future date.
After defendant arrived in New Jersey, he was threatened by the individual he was to testify against. He then decided to repudiate his obligations under the plea bargain. Thus, what was intended to be a quick trip to New Jersey for testimony, followed by a return to Florida, turned into a protracted delay. Defendant was in New Jersey six yearsfrom 1988 to 1994before his case came to trial. After the five-year period of section 775.14 expired, defendant filed his motion to preclude Florida sentencing, claiming that he was entitled to be released from any obligation under his plea bargain.
Whether analyzed in terms of tolling under Gazda, or equitable estoppel under Major League Baseball, the defendant is not entitled to invoke the five-year limitation of section 775.14. From an equitable standpoint, and as a matter of common sense, the defendant cannot accept the benefits of his plea bargaina shorter sentence and concurrent timeand then claim that he is under no obligation to carry out his side of the bargain.
From the standpoint of the Gazda decision, the statute should be deemed to have been tolled because the defendant was outside of Florida from 1988 onward. The delay in sentencing was attributable to the defendant's repudiation of the New Jersey plea agreement.

B.
The defendant argues that he is allowed to invoke section 775.14 because the State never made a formal request to extradite him from New Jersey to Florida. That is unpersuasive. As already explained, section 775.14 does not apply here, but if it does, the defendant is estopped from invoking its benefits. The defendant cannot claim the benefits of his plea bargain and simultaneously disclaim his obligations thereunder. Mann, 622 So.2d at 596-97.
Further, the delay in Florida sentencing was attributable to defendant's repudiation of his New Jersey obligations. While seeking extradition of defendant may have been an available option, Florida had no legal duty to pursue that option. Defendant cannot cause the delay by his actions in New Jersey, and then complain that Florida failed to cure the problems the defendant himself caused.
The defendant relies on Brown v. State, 674 So.2d 738 (Fla. 2d DCA 1995), but that case is not on point. The issue in Brown was whether the State had unreasonably delayed serving criminal charges on the defendant, where the State filed the charges in 1983 but did not serve them on defendant (who was in federal custody) until 1993. Unreasonable pre-arrest delays can, of course, adversely affect the defendant's ability to defend against the criminal charges, owing to the passage of time. Reino v. State, 352 So.2d 853, 860 (Fla.1977), receded from in part on other grounds, Perez v. State, 545 So.2d 1357, 1358 (Fla.1989); Brown, 674 So.2d at 741.
The present case does not involve delay in arresting the defendant or bringing him to trial. In this case the defendant was timely arrested and charged, and he pled guilty. The guilty plea included a specific agreement on the sentence to be imposed. Brown does not apply either expressly or by analogy.[6]

*691 V.
The defendant argues alternatively that his counsel was ineffective in advising him to enter into the New Jersey plea agreement. The trial court rejected defendant's claim after an evidentiary hearing. This determination is supported by the record.

VI.
The State's cross-appeal is well taken. We respectfully disagree with that part of the trial court's order which made the defendant's Florida sentence coterminous with his New Jersey sentence.
The plea agreement in this case was for a concurrent sentence, not a coterminous sentence. The plea agreement states, "It is the intent ... that these sentences shall run concurrently with the charges which the defendant is facing in Hudson County, in the State of New Jersey." (R. 19).
The plea agreement provides, "[I]t is the intent of the State of Florida that he shall serve thirty (30) actual years on the charges in the instant cause. However, the exact length of his sentence in Florida shall not be reduced based upon any subsequent action to reduce his sentence in New Jersey...." (R. 20). Plainly the defendant's repudiation of his New Jersey plea agreement constitutes a "subsequent action to reduce his sentence in New Jersey."
The agreement goes on to say, "Therefore, to the extent finality in sentencing is possible, the defendant shall be released from prison on the instant charge in a normal fashion, not in any way dependent upon the action of a foreign state; except to the extent that he shall not serve an actual sentence of greater than thirty (30) calendar years, based upon the charges in the instant cause."
Despite the plain terms of the Florida plea agreement, the defendant argues that his Florida sentence should be shortened because he obtained a shorter sentence in New Jersey. Under the Florida agreement, the receiving of a shorter sentence in New Jersey is not a ground for relief from the Florida sentence.
The trial court reasoned that the intent of the Florida plea bargain was for the defendant to receive a sentence which would be coterminous with the New Jersey sentence. That is incorrect. At the time the parties entered into this plea agreement, it was anticipated that the defendant would receive an agreed New Jersey sentence of life with a mandatory minimum of thirty years. The idea of the Florida plea bargain was that the Florida mandatory thirty years would be concurrent with the New Jersey mandatory minimum of thirty years. But the written plea agreement was clear that if there were any change from the anticipated sentence in New Jersey, the Florida sentence was to remain at thirty years. We reverse the sentencing order on this point and remand with directions to strike the provision that the Florida sentence will be coterminous with the New Jersey sentence.
Although we have rejected defendant's claim that his sentences should be vacated entirely, the defendant is entitled to partial relief. The defendant is entitled to resentencing to carry out the intent of the plea agreement. The plea agreement included a provision for a life sentence on count I, attempted first degree murder, but the agreement goes on to specify the intent to be that the defendant serve an actual thirty years in prison, and then be released. Defendant must be resentenced to an appropriate *692 term of years in order to accomplish this.[7]

VII.
The legislature should repeal section 775.14, a step originally recommended by Professor Clark in 1961. 14 Fla. L.Rev. at 225. As this case and Gazda illustrate, the statute is being applied to situations for which it was never intended.
The point of the statute was to prevent defendants from being held endlessly on probation, beyond the expiration of the legal maximum of the crime for which the defendant had been sentenced. To that end, section 775.14 created a five-year limitation on withheld sentences.
In the meantime, it has become well settled that a probation order cannot exceed the legal maximum of the underlying crime. Francois v. State, 695 So.2d 695, 696-97 (Fla.1997); State v. Summers, 642 So.2d 742, 744 (Fla.1994); Bateh, 110 So.2d at 10; Helton, 106 So.2d at 81; §§ 948.01(11), 948.06(3), Fla. Stat. (2001).
In view of these other developments in the law, section 775.14 is no longer needed. Because of the problems the statute is needlessly causing (of which this case is an example), section 775.14 should be repealed.

VIII.
For the stated reasons, we reject the defendant's appeal. On the cross-appeal we reverse the sentencing order and remand with directions (a) to strike the provision that the Florida sentence will be conterminous with the New Jersey sentence, and (b) to resentence defendant to a term of years, consistent with the plea bargain.
RAMIREZ, J., concurs and files an opinion.
GREEN, J., concurs in result only.

APPENDIX
Following are the provisions of the plea agreement dealing with concurrent sentencing in this case:
It is the intent of all of the parties and the specific agreement of the State of Florida that these sentences shall run concurrently with the charges which the defendant is facing in Hudson County, in the State of New Jersey.
The issue of the concurrent nature of the expected sentences is outlined in this paragraph. The expected sentence in the State of New Jersey is a sentence of life imprisonment with a thirty (30) year mandatory minimum sentence without eligibility for parole, or gain time, or any form of early release for the homicides in that state. The negotiated sentence in this cause shall begin on the date of sentencing in Florida, but shall be served concurrently with the expected sentence in New Jersey. The actual term of sentence; i.e. the actual number of years which Carlos Rafael Sainz would serve in custody on his plea in the instant case shall not be greater in length than thirty (30) calendar years, which also represent the minimum *693 mandatory portion of the New Jersey sentence. If, for any reason, upon completion of thirty (30) years of incarceration the defendant has completed his New Jersey sentence and would be eligible for release, but is still being imprisoned on the instant case; he shall have the right to release, since it is the intent of the State of Florida that he shall serve thirty (30) actual years on the charges in the instant cause. However, the exact length of his sentence in Florida shall not be reduced based upon any subsequent action to reduce his sentence in New Jersey nor any change in New Jersey law which would have the effect of lessening the length of his actual period of incarceration. Therefore, to the extent finality in sentencing is possible, the defendant shall be released from prison on the instant charge in a normal fashion, not in any way dependent upon the actions of a foreign state; except to the extent that he shall not serve an actual sentence of greater than thirty (30) calendar years, based upon the charges in the instant cause.
(Emphasis added).
RAMIREZ, Judge (concurring).
I concur with Judge Cope on the result and with his reasoning except insofar as he states that the statute was tolled under State v. Gazda, 257 So.2d 242 (Fla.1971). Additionally, I believe the original opinion placed too much emphasis on the statutory language at the expense of legislative intent. The Florida Supreme Court recently made clear in Joshua v. City of Gainesville, 768 So.2d 432 (Fla.2000) that we should not blindly follow statutory language in derogation of common sense. The Court stated as follows:
When interpreting a statute and attempting to discern legislative intent, courts must first look at the actual language used in the statute. However, if the language of the statute is unclear, then rules of statutory construction control. One rule of construction provides "[I]n statutory construction a literal interpretation need not be given the language used when to do so would lead to an unreasonable conclusion or defeat legislative intent or result in a manifest incongruity." Once the intent is determined, the statute may then be read as a whole to properly construe its effect.
Id. at 435 (citations omitted). I am now convinced that to allow Sainz to use the statute of limitations of section 775.14, Florida Statutes (1995) to obtain a discharge would be unreasonable, it would defeat legislative intent, and would result in a manifest incongruity.
NOTES
[1] The New Jersey convictions were affirmed in 1996.
[2] "It is well settled that in construing a statute the court should consider its history, the evil to be corrected, the intention of the lawmaking body, the subject regulated and the object to be obtained." 48A Fla. Jur.2d Statutes § 151, at 457 (2000) (footnote omitted).

On considering the materials cited earlier in this opinion, it is clear that a "withheld sentence" is a term of art referring to probation imposed by the mechanism of withholding sentence.
[3] The State has conceded that section 775.14 applies to the sentencing of this defendant. We are not, however, obligated to accept the State's concession. The trial court rejected the defendant's claim that section 775.14 barred his sentencing in this case, and that ruling by the trial court may be upheld for any reason which appears in the record. Dade County School Board v. Radio Station WQBA, 731 So.2d 638, 644 (Fla.1999).
[4] In count I the information and judgment refer to section 775.084, Florida Statutes, which is apparently a clerical error. The intended reference is evidently the firearm enhancement statute, section 775.087, Florida Statutes. Section 775.084 is the habitual offender statute, and defendant was not sentenced as a habitual offender.
[5] The State had filed a motion to depart from the sentencing guidelines, relying on Baker and Moreira v. State, 500 So.2d 343 (Fla. 3d DCA 1987). (R. 24).
[6] Brown involves the interpretation of a different statute of limitations, section 775.15, Florida Statutes, not the statute at issue in this case. The Brown court took the position that for purposes of initiating a prosecution, the only reasons for tolling the section 775.15 statute of limitations are the reasons expressed in the statute itself. 674 So.2d at 741-42.

For purposes of section 775.14, however, the Florida Supreme Court held in Gazda that nonstatutory tolling reasons can be recognized. 257 So.2d at 243-44.
Further, the doctrine of equitable estoppel is nonstatutory. Major League Baseball, 790 So.2d at 1076-80.
[7] At the time of this 1988 agreement, there was some uncertainty among the bench and bar about whether a life term under the Florida sentencing guidelines meant life without parole. It is now settled that a guidelines life sentence is life without parole. Wemett v. State, 567 So.2d 882, 884 (Fla.1990).

Although the plea agreement included a life term for attempted murder, the clear intent of the agreement was that the defendant would be released after thirty years. That being so, the defendant is entitled to relief from the "life" provision of the Florida agreement. See Blackshear v. State, 531 So.2d 956 (Fla. 1988); Rubalcaba v. State, 729 So.2d 994 (Fla. 3d DCA 1999); Herring v. State, 411 So.2d 966 (Fla. 3d DCA 1982).